Gerald OBERG, et al., Plaintiffs–
Appellees,

v.

ALLIED VAN LINES, INC., et
al., Defendants–Appellants.

Nos. 92–3472, 92–3893.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 9, 1993.

Decided Nov. 23, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 10, 1994.

George F. Galland, Jr. (argued), Mark S. Kende, Davis, Miner, Barnhill & Galland, Chicago, IL, and Charles Barnhill, Jr., Davis, Miner, Barnhill & Galland, Madison, WI, for plaintiffs-appellees.

Keith A. Dorman, Ross & Hardies; and Brian W. Bulger (argued), and Carolyn C. Gessner, Katten, Muchin & Zavis, Chicago, IL, for defendants-appellants.

Robert E. Williams, Douglas S. McDowell and Ann Elizabeth Reesman, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Council, amicus curiae.

Gwendolyn Young Reams, Carolyn L. Wheeler, Donald R. Livingston, and Dori K. Bernstein (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, for E.E.O.C., amicus curiae.

Before FLAUM and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.[*]

FLAUM, Circuit Judge.

In this case, Gerald Oberg, Nicholas Tautz and Stephen Adams ("Plaintiffs") were all employees of Allied Van Lines, Inc. ("Allied"). As part of a reduction in force, Allied fired the Plaintiffs along with approximately 60 other employees. Contesting their termination, Plaintiffs filed suit against Allied and its parent company NFC Consortium ("Defendants") under the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 626 (1967). The Defendants moved to dismiss the suit under Rule 12(b)(6), or alternatively for summary judgment under Rule 56, proffering special severance agreements ("Severance Agreements") executed by the Plaintiffs. In the Severance Agreements the Plaintiffs promised that in return for extra severance pay, they would agree to hold Allied harmless against future lawsuits. The district court denied the Defendants' motions and then certified its order to this court for interlocutory review pursuant to 28 U.S.C. § 1292(b). We affirm.

## I. Facts

At the time of the firings, Allied offered each Plaintiff a choice between two severance

---

[*] The Honorable John W. Reynolds, Senior District Judge of the Eastern District of Wisconsin, sitting by designation.

benefits packages: (1) the standard severance package of two weeks' salary, or (2) approximately twenty weeks of additional pay in return for executing the Severance Agreement. Specifically, the additional severance pay would have been $15,871.51 for Oberg, $25,717.23 for Tautz, and $21,887.70 for Adams, each payable in bi-weekly disbursements. Further, the Severance Agreement provided that each of the Plaintiffs would continue to receive health benefits and pension contributions during the term of the disbursements.

In their Severance Agreements, the Plaintiffs promised that they would release Allied from all claims (including claims under ADEA) "arising from and during employment or as a result of the termination" and that they would not file any subsequent claim against Allied. *Oberg v. Allied Van Lines Inc.*, No. 91 C 6576, 1992 WL 211506 (N.D.Ill.1992) (Modified Memorandum Opinion and Order) (hereinafter, "*Oberg,* Order").[1] The Severance Agreements also provided that in the event of Plaintiffs' breach, the Plaintiffs must return to Allied all severance benefits.[2]

After all Plaintiffs received their last severance disbursement, they each filed charges of age discrimination against Allied with the Equal Employment Opportunity Commission ("EEOC"). After the sixty-day EEOC investigation period had expired on each of the Plaintiffs' EEOC complaints, the Plaintiffs filed their class action complaint alleging that Allied violated the ADEA. The Plaintiffs stipulated that they neither returned nor offered to return any of the severance benefits received from Allied for executing their Severance Agreements. The Defendants admitted that at the time Allied executed its group termination program, the new waiver provisions of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f) (1991) were in effect, and that the termination program offered to the Plaintiffs failed to include the OWBPA provisions provided under § 626(f)(1)(F) & (H).

The Defendants contend that even if the Severance Agreements were initially invalid for failing to comply with OWBPA, the Plaintiffs ratified their Severance Agreements by continuing to accept Allied's additional severance payments. Thus, the Defendants moved to dismiss the entire complaint under Rule 12(b)(6) or to grant summary judgment under Rule 56. The Defendants argued, in the alternative, that the Plaintiffs must at least tender back all their severance benefits received, as required under the Severance Agreement, before being allowed to maintain the ADEA suit. Defendants also counterclaimed for contract damages. The district court denied Defendants' motion while granting Plaintiffs' summary judgment motion over Defendants' counterclaims. We affirm the district court's ruling.

## II. Analysis

In their appeal, Defendants argue the following four points that: (A) the Severance Agreements signed by Plaintiffs were valid and effectively waived Plaintiffs' right to sue Allied under ADEA, (B) even if the Severance Agreements were invalid, Plaintiffs subsequently ratified their waivers by accepting the severance benefits from Allied, (C) the Plaintiffs must at least tender back the severance benefits before being allowed to main-

---

1. The Severance Agreements between Plaintiffs and Allied provided in pertinent part the following:

   The undersigned hereby releases, remits, acquits and discharges Allied Van Lines, Inc., ... from any and all claims, ... for any and all liability ... arising from any and all losses ... including, but not limited to claims of discrimination under any federal, state, or local law, rule or regulation or worker's compensation or disability claims under state or local laws and specifically any rights or claims under the Age Discrimination in Employment Act. This release, related to claims arising from and during employment or as a result of termination, is for any relief, no matter how denominated, including but not limited to wages, back-pay, compensatory damages or punitive damages. The employee further agrees that he/she will not file or permit to be filed on his/her behalf any such claim.
   *Oberg,* Order at 3 & Appendix A.

2. The Severance Agreement provided the following: "Breach of this Agreement shall constitute a forfeiture of additional benefits referenced. If those benefits have already been conveyed as of the time of breach, the employee agrees that he/she will return these benefits." *Oberg,* Order at Appendix A.

tain their ADEA suit against Allied, and (D) the district court improperly granted Plaintiffs summary judgment over Allied's contract counterclaims. We shall address these arguments serially.

## A. Validity of Waiver

■ The Defendants first argue that the Severance Agreements drafted by Allied comply with all the requirements of OWBPA, and thus, their execution by Plaintiffs effectively waived Plaintiffs' rights and claims under ADEA. We disagree.

In November of 1991, Congress amended the ADEA, specifically limiting the manner in which an employee may waive the protections afforded under federal law, through the enactment of the OWBPA. 29 U.S.C. § 626(f). The language of the OWBPA text provides "An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). For the purposes of OWBPA, Congress specifically defined "knowing and voluntary" such that "a waiver may not be considered knowing and voluntary unless at a minimum ..." a litany of statutory factors (A) through (H) are either satisfied or inapplicable. 29 U.S.C. § 626(f)(1)(A)–(H). Since the Defendants conceded before the court that their termination program offered to the Plaintiffs failed to include the OWBPA provisions provided under § 626(f)(1)(F) & (H), Defendants must explain why compliance with this subsection is not required in this case. Allied argues that its requested waiver is neither "in connection with an exit incentive program" nor "other employment termination program," and that its severance program was not "offered to a group or class of employees," thus rendering subsections (F)(ii) and (H) inapplicable.[3]

The district court found that Allied had offered the Plaintiffs a waiver in connection with a group employment termination program. *Oberg v. Allied*, No. 91 C 6574 (N.D.Ill. Oct. 22, 1993) (Amended Order Granting Summary Judgment) (hereinafter, "*Oberg*, Amended Order").[4] We review such factual findings under a clearly erroneous standard. *United States v. Johnson*, 997 F.2d 248, 255 (7th Cir.1993). Because we believe that sixty plus employees terminated at one time satisfies OPBWA's definition of a group termination, the district court's factual findings clear the review standard. Thus, we conclude that Allied is not excused from the provisions of § 626(f)(1)(F) & (H). Furthermore, since the Defendants concede that the termination program they offered to the Plaintiffs failed to include the OWBPA provisions provided under § 626(f)(1)(F) & (H), Plaintiffs did not knowingly and voluntarily waive, as defined in the OWBPA, any right and claim allowed under the ADEA. *See* 29 U.S.C. § 626(f)(1). We therefore conclude that at the time of its execution, the Severance Agreements were unenforceable against Plaintiffs.

## B. Ratification

■ Next, the Defendants argue that even if Plaintiffs' Severance Agreements were unenforceable at the time of their execution, Plaintiffs subsequently ratified their Severance Agreements by continuing to accept subsequent benefits from Allied. We again disagree.

Before Congress passed OWBPA, some circuits applied the common law doctrine of ratification, allowing employees and employers to waive ADEA provisions by entering into severance agreements. *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217 (5th Cir.1991) (permitting an employee, who signed a severance agreement prior to enactment of OWBPA, to waive ADEA though subsequent

---

**3.** Subsection (F)(ii) specifically provides as follows: "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement." 29 U.S.C. § 626(f)(1)(F)(ii).

Subsection (H) specifically provides as follows: "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees" then the employer must give the employee certain written information specified. 29 U.S.C. § 626(f)(1)(H).

**4.** Allied conceded that it gave Plaintiffs neither the 45 days as required by subsection (F)(ii), nor the written information specified in subsection (H). *Oberg*, Amended Order at 3.

ratification); *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 139 (1991) (allowing ratification for ADEA waiver signed prior to OWBPA). Had Congress not spoken this court may have even been inclined to follow *Grillet* and *O'Shea,* and allow employees the freedom to ratify their severance agreements through general principles of contract law. However, Congress has occupied this area of the law through the enactment of the OWBPA.

The OWBPA limits the form in which an employee and employer may contract to waive the ADEA provisions. The OWBPA states that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). The OWBPA language plainly restricts an employee's freedom to waive his rights or claims under the ADEA. When the plain text of a statute is clear then "courts must presume that a legislature says in a statute what it means and means in a statute what it says. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat. Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted).

In interpreting the requirements of the OWBPA we assume that the statute's operative words carry the plain meaning within their context. Under OWBPA, unless a waiver contract takes the form required by the statute, an employer and an employee cannot contract to waive the ADEA provisions. *Forbus v. Sears, Roebuck & Co.,* 958 F.2d 1036 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992); *Isaacs v. Caterpillar, Inc.,* 765 F.Supp. 1359 (C.D.Ill.1991). In both *Forbus* and *Isaacs,* former employees filed suit under ADEA, contravening a previously executed promise not to sue their employer. *Forbus,* 958 F.2d at 1038; *Isaacs,* 765 F.Supp. at 1362. As is the case here, none of the waiver contracts were initially valid when executed. *Forbus,* 958 F.2d at 1040; *Isaacs,* 765 F.Supp. at 1369. Both courts rejected the legal possibility of an invalid ADEA waiver ever becoming subsequently ratified, even if the employee were to continue accepting the agreement's benefits. *Forbus,* 958 F.2d at 1040; *Isaacs,* 765 F.Supp. at 1373. We agree with *Forbus* and *Isaacs.* No matter how many times parties may try to ratify such a contract, the language of the OWBPA, "[a]n individual may not waive", forbids any waiver. *See* 29 U.S.C. § 626(f)(1). Therefore, we hold, as a matter of law, that Plaintiffs cannot ratify their Severance Agreements by retaining the consideration they received from Allied.

### C. Tender Back

Defendants further argue that, at a minimum, the Plaintiffs must tender back the consideration received for executing the Severance Agreements. Initially, Defendants' argument seems appealing under common law notions of fairness. Furthermore, the circuits may appear split as to whether an employee, who sues in violation of an executed severance agreement, must tender-back to his employer those severance benefits before maintaining his suit. *Compare Forbus,* 958 F.2d at 1041 (stating that employees "should not be required to tender their retirement benefits back to [employers] as a prerequisite to the maintenance of their lawsuit"), *and Isaacs,* 765 F.Supp. at 1366 (rejecting any tender requirement in ADEA cases), *with Grillet v. Sears,* 927 F.2d 217, 220 (5th Cir.1991) ("A party seeking rescission must attempt to restore the *status quo ante* —that is, to return the parties to the position they held just before they entered into the agreement").[5] In resolving the tender back issue, we find the reasoning in *Forbus* and *Isaacs,* relying on Supreme Court precedent, compelling.

While the Supreme Court has not considered the tender back issue in an ADEA case,

---

5. *Grillet* may be distinguished from *Forbus* and *Isaacs* in that the *Grillet* court considered a plaintiff suing under a claim of wrongful inducement thus seeking rescission of the severance agreement. 927 F.2d 221 ("The law of contracts requires a party claiming wrongful inducement to seek rescission shortly after discovering the misrepresentation.") After OWBPA, neither the facts of *Forbus, Isaacs,* nor those before the court today, present the same common law contract issues as were before the *Grillet* court.

the Court has considered the issue in the context of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (1939). *See Hogue v. Southern R. Co.,* 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968). In *Hogue,* the Court rejected any notion that state common law principles could help resolve the tender back question in FELA cases. The Court stated that "[t]he question whether a tender back of the consideration was a prerequisite to the bringing of the suit is to be determined by federal rather than state law." The Court went on to hold that an employee, who previously executed an employer release, need not, as a precondition to bringing his suit under FELA, tender back to his employer any of the consideration he received for executing the release. *Id.* at 517. The Court did, however, state that the benefits paid should be deducted from any award to the employee. *See id.* at 518.

Subsequently, the Eleventh Circuit and the Central District of Illinois both applied the reasoning of *Hogue* to ADEA cases. *See Forbus,* 958 F.2d at 1041 ("ADEA plaintiffs are not required to tender the consideration received for releases as a condition prerequisite to challenging those releases in court"); *Isaacs,* 765 F.Supp. at 1366 (reasoning that *Hogue* prohibits a tender requirement in ADEA suits). Noting the factual similarities between *Forbus* and *Isaacs,* and this case, we are convinced that the reasoning behind *Forbus* and *Isaacs,* analogizing the policy of ADEA to that of FELA, and thus applying *Hogue,* is correct. Therefore, we hold that Plaintiffs were not required to tender back their severance benefits before filing their ADEA claims, notwithstanding Plaintiffs' previously executed waiver of all claims against Allied.

**D. Summary Judgment on Counterclaims**

■ Defendants have appealed the district court's grant of summary judgment on their counterclaims arguing that the court denied Defendants both adequate notice and an opportunity to respond to Plaintiffs' summary judgment motion, as required under Fed.R.Civ.P. 56(c) and Circuit Rule 50. Spe-

cifically, Defendants complain that the court failed to afford Defendants the full ten days notice on Plaintiffs' motion, as required by Rules 56(c) and 50. In response, we observe that such objections must be raised before the trial court or they are forever waived. *See Tripp v. May,* 189 F.2d 198, 199–200 (7th Cir.1951) (holding that a litigant waives any violations of Rule 56(c)'s ten day requirement if he fails first to object before the trial court). Thus, Allied waived its chance to appeal these procedural matters by waiting until this appeal to raise the issue. Furthermore, noncompliance with the ten-day rule, or with other procedural provisions in Rule 56, is not grounds for reversal unless the nonmovant is able to show it could have offered evidence to create a material issue of fact. *See Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 391 (7th Cir.1981) ("where no potential disputed material issue of fact exists, a summary judgment will not be disturbed even though the district court disregarded the procedure which should have been followed."); *see also Tripp,* 189 F.2d at 200; *see Ikerd v. Lapworth,* 435 F.2d 197, 203 (7th Cir.1970). A failure to afford ten days notice is not grounds for reversal unless the non-movant can show prejudice. *Ikerd,* 435 F.2d at 203; *Chicago–Midwest Meat Ass'n. v. City of Evanston,* 589 F.2d 278, 282 (7th Cir.1978). In *Chicago–Midwest,* we refused to reverse despite noncompliance with the ten-day rule because "[i]f we assume the existence of all the facts alleged by [Chicago–Midwest], its challenges to the local ordinances fail nonetheless." *See id.* at 282. The same is true here.

Assuming all the facts alleged in Defendants' counterclaims, all their arguments fail. Defendants breach-of-contract action fails because an unenforceable contract cannot be enforced. Further, Defendants' rescission argument also must ultimately fail. It may be true that if a party is suing to rescind a contract, he must first tender back[6] the consideration, *see Pan–American Petroleum & Transp. Co. v. United States,* 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734 (1927); *United*

---

6. As discussed earlier, the Plaintiffs have no tender-back requirement to maintain their ADEA

action. *See infra* discussion of *Hogue, Forbus,* and *Isaacs.*

*States v. Texarkana Trawlers,* 846 F.2d 297 (5th Cir.) *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); however, here Plaintiffs are not suing to rescind their contract; their contract was already dead by force of law. Finally, Defendants cogently argue that Plaintiffs should not keep all of the severance benefits if the waiver contract fails. While the idea has appeal, Defendants have failed to plead specifically any recoverable claim. We cannot speculate as to the possible merit of hypothetical claims since any of Defendants' possible equitable counterclaims not raised before the trial court have been waived. *See House v. Belford,* 956 F.2d 711, 720 (7th Cir.1992) (stating that such claims not first raised at the trial court have been waived and cannot be considered on appeal). In this case Defendants may only obtain a set-off of the severance benefits paid from any award determined to be due Plaintiffs. *See Hogue,* 390 U.S. at 518, 88 S.Ct. at 1152.

Therefore, assuming the truth of all the facts alleged by Defendants, its challenges to the district court's summary judgment fail. Since no potential disputed material issue of fact exists, the summary judgment on Defendants' counterclaims will not be disturbed even if the provisions of Fed.R.Civ.P. 56(c) and Circuit Rule 50 were not observed.

### III. Conclusion

The Severance Agreement drafted by Allied did not comply with the requirements of OWBPA, and thus Allied cannot enforce its Severance Agreement against the Plaintiffs to waive their ADEA claims. Also, since OWBPA proscribes any ADEA waiver that fails to meet OWBPA's provisions, Plaintiffs cannot ratify the Severance Agreement by failing to tender back severance benefits. Further, Plaintiffs need not tender their severance benefits back to Allied as a prerequisite to the maintenance of an ADEA lawsuit. Finally, the district court properly dismissed all Defendants' counterclaims with prejudice. Those counterclaims not before raised have been waived. The severance benefits Defendants paid to Plaintiffs may be deducted from any award determined to be due Plaintiffs.

Therefore, for the foregoing reasons, the district court's order is AFFIRMED and this case is REMANDED for trial on the merits in accordance with this opinion.

AFFIRMED.