867 F.Supp. 873 (1994)
Randell BURCH, Jim L. Green, Gary W. Miller and Larry G. Yount, Plaintiffs,
v.
FLUOR CORP., St. Joe Minerals Corp., the Doe Run Investment Holding Corp., and Leadco Investments Inc., all d/b/a the Doe Run Company, Defendants.
No. 4:93CV0831.
United States District Court, E.D. Missouri, Eastern Division.
April 11, 1994.
*874 William A. Brasher, William A. Brasher Law Offices, St. Louis, MO, for plaintiffs.
Michael P. Burke, Zachary A. Hummel, Bryan Cave, St. Louis, MO, for defendants.
*875 Samuel A. Marcosson, E.E.O.C., Office of Gen. Council, Washington, DC, for E.E.O.C.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court pursuant to Defendants' Motion for Summary Judgment.
Defendants, the Doe Run Investment Holding Corporation, St. Joe Minerals Corporation and Leadco Investments, Inc. are partners in the Doe Run Company. Each of the partners in the Doe Run Company is a wholly owned subsidiary of Fluor Corporation. Plaintiffs are former salaried employees of the Doe Run Company. In early 1991, the Doe Run Company terminated Plaintiffs' employment in connection with a reduction in force. Plaintiffs contend that they were terminated because of their age in violation of Age Discrimination in Employment Act, (ADEA), 29 U.S.C. § 621 et seq. and the Missouri Human Rights Act (MHRA), Mo. Rev.Stat. 213.010 et seq. In their Motion for Summary Judgment, Defendants contend that Plaintiffs executed a valid waiver of the asserted claims.

Summary Judgment Standard
Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party always bears the burden of informing the Court of the basis for the motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53. However, the party opposing the summary judgment motion may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a material factual dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
When presented with such a motion, the Court must determine whether any factual issues exist that may reasonably be resolved in favor of either party and therefore must be submitted to the finder of fact. Anderson, 477 U.S. at 250, 106 S.Ct. at 2511. The substantive law determines which facts are relevant and which are immaterial. Only disputes which might affect the outcome will properly preclude summary judgment. Id. at 248, 106 S.Ct. at 2510; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). The Court must view the facts in the light most favorable to the nonmoving party, giving such party the benefit of all reasonable inferences to be drawn from the facts. St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp., 968 F.2d 695, 699 (8th Cir.1992).

Facts
Viewing the record in the light most favorable to Plaintiffs, the Court finds for the purposes of the pending motion, that the following facts are true. Plaintiffs Randell Burch, Jim L. Green, Gary W. Miller and Larry G. Yount were terminated from their employment with Defendants on April 8, 1991. All plaintiffs were between the ages of forty and seventy at the time of their discharge. By letters dated April 8, 1991, the Doe Run Company informed each Plaintiff of the termination. (Plaintiffs' Exh. B.) The Company announced a twenty-five percent reduction in its annual lead production figures and a corresponding twenty-five percent reduction in the workforce. Each Plaintiff was informed that his discharge was "not a reflection on performance." (Id.)
Plaintiffs also received memoranda detailing the conditions of discharge with respect to pay, unused vacation time, insurance, retirement benefits and career counseling. (Id.) Plaintiffs were informed that they were entitled to severance pay if they executed a Settlement Agreement and Release. (The Release.) Each memorandum was identical except for the amount of severance pay each Plaintiff would receive upon execution of the Release. (Plaintiffs' Exh. B.)
Plaintiffs were not given the opportunity to negotiate the terms of the Release. (Plaintiffs' Exh. A.) Plaintiffs were given forty-five days to consider the terms of the Release and had seven days after signing to revoke the Release. Plaintiff Burch signed the Release thirty-three days after termination. *876 Plaintiff Green signed the Release eleven days after termination. Plaintiff Miller signed the Release five days after termination. Plaintiff Yount signed the Release twenty-three days after termination. (Defendants' Exhs. A-D.) None of the Plaintiffs revoked the Release within the seven day time period.
In relevant part, the Release provided that:
2. The COMPANY will exercise its discretion to provide a severance payment as described in THE DOE RUN COMPANY SEVERANCE POLICY FOR TERMINATED SALARIED EMPLOYEES (hereinafter "POLICY") under the formula described [in the policy]. This severance allowance is provided in exchange for the EMPLOYEE'S promises and obligations herein.
3. EMPLOYEE agrees that he will not file or otherwise submit any charge, claim, complaint, or action to any agency, court, organization, or judicial forum against COMPANY or any of its officers, agents, employees, or anyone acting on its behalf, arising out of any actions or non-actions on the part of COMPANY. Said claims, complaints, and actions include, but are not limited to, ... any claims of violations arising under ... the Age Discrimination in Employment Act, 29, U.S.C. § 621 et seq., ... or of the Missouri Human Rights Act 213.010 R.S.Mo. et seq.

(Defendants' Exh. A-D.) Plaintiffs were not provided any written information regarding the other employees who were terminated on April 8, 1991.

Analysis
Defendants contend that the instant action is barred by the terms of the Release. Plaintiffs counter that their waiver of claims was not knowing and voluntary as required by 29 U.S.C. § 626(f)(1). Plaintiffs also urge the Court to apply the ADEA's requirements for knowing and voluntary waiver to their state law claims.
The ADEA provides that "an individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). Subsection (1) sets forth the minimum requirements for a knowing and voluntary waiver. The requirements at issue in this litigation are as follows:
(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate; ...
(E) the individual is advised in writing to consult with an attorney prior to executing the agreement; ...
(H) if a waiver is requested in connection with an exit incentive program or other employment termination program offered to a group or class of employees, the employer ... informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to
(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.
29 U.S.C. § 626(f)(1).
The statute does not define the term "employment termination program." Nor has the Court's independent research discovered any case law construing the term. However, the legislative history is helpful:
In the context of ADEA waivers, the Committee recognizes a fundamental distinction between individually tailored separation agreements and employer programs targeted at groups of employees. Individual separation agreements are the result of actual or expected adverse action against an individual employee. The employee understands that the action is being taken against him, and he may engage in arms-length negotiation to resolve any differences with the employer.

*877 Group termination and reduction programs stand in stark contrast to the individual separation. During the past decade, in particular, employers faced with the need to reduce workforce size have resorted to standardized programs designed to effectuate quick and wholesale reductions. The trademark of involuntary termination programs is a standardized formula or package of employee benefits that is available to more than one employee. The trademark of voluntary reduction programs is a standardized formula or package of benefits designed to induce employees voluntarily to sever their employment. In both cases, the terms of the programs generally are not subject to negotiation between the parties. In addition, employees affected by those programs have little or no basis to suspect that action is being taken based on their individual characteristics. Indeed, the employer generally advises them that the termination is not a function of their individual status. Under these circumstances, the need for adequate information and access to advice before waivers are signed is especially acute.
S.Rep.No. 101-263, 101st Cong., 2d Sess. 32 (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1537-38.
Upon review of the record in light of the foregoing, the Court concludes that Plaintiffs were discharged in connection with an employment termination program. Plaintiffs were terminated in connection with a twenty-five percent reduction in force. Plaintiffs received a standard package of benefits upon termination that varied only in the amount of severance pay each was entitled to receive. Plaintiffs were not afforded the opportunity to negotiate the terms the Release. Plaintiffs were notified that their discharge was "not a reflection on performance."
Defendants do not dispute any of the foregoing facts. However, Defendants maintain that Plaintiffs were not dismissed in connection with an employment termination program because they were not offered an "any inducement or incentive to retire early, accept layoff or voluntarily terminate." (Defendants' Reply, p. 6.) Defendants state that Plaintiffs were involuntarily terminated in connection with a reduction in force and then, pursuant to a separate "policy," offered the opportunity to receive severance benefits in exchange for a waiver of claims. (Id. at 6-7.) Defendants contend that the latter program was not designed to reduce employment and therefore the terms of Subsection H to 29 U.S.C. § 626(f)(1) do not apply.
Defendants implicitly acknowledge that the relevant legislative history indicates that the term "employment termination program" refers to both voluntary and involuntary programs. However, Defendants define involuntary termination programs as those packages "designed to reduce employment through employees electing to surrender their employment involuntarily." (Defendants' Response to Plaintiffs' Surreply, p. 2.) Such packages, according to Defendants, involve an involuntary separation accompanied by "an offer to adjust or change the nature of the separation." (Id. at 2-3.) Because Plaintiffs were not offered the opportunity to "adjust or change the nature of their separation" with Doe Run Company, Defendants conclude that Subsection H does not apply.
The Court declines to adopt Defendants' somewhat strained reading of the statute and the legislative history. First, the Court notes that the plain language of the statute does not require that a termination program offer employees an incentive or inducement to leave the company's employ. In fact the juxtaposition of the terms "exit incentive" program and "other employment termination program" indicates that the universe of other programs includes non-incentive programs.
Second, the Court disagrees with Defendants' implicit contention that the severance benefit program was distinct from the reduction in force. Plaintiffs were notified on April 8, 1991 that they were being terminated. By memorandum of the same date, Plaintiffs were informed of the conditions of severance, including the fact that their receipt of severance pay was contingent upon execution of a release document. Under these circumstances, the Court finds no logical or statutory basis for distinguishing between situations where employees are asked *878 to sign a waiver before termination and the instant scenario where Defendants' request for a waiver came after termination was definite. In either case, the request for waiver is "in connection with" the termination program.
Because Plaintiffs executed the Release in connection with an employment termination program, the Release is subject to the requirements of 29 U.S.C. § 626(f)(1)(H). Because Defendants did not inform Plaintiffs in writing of any eligibility factors for the termination program, any time limits applicable to such program, the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program, Plaintiffs' waiver was not knowing and voluntary for the purposes of the ADEA.[1] Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' federal age discrimination claims will be denied.[2]
Plaintiffs urge the Court to apply the same knowing and voluntary waiver standard to Plaintiffs' release of their state law claims. In the alternative, Plaintiffs contend that they were under economic duress at the time they executed the Releases and therefore the waivers are ineffective.
While it is true that courts have looked to federal law in construing the terms of the MHRA, that approach is not appropriate here. The elements of a knowing and voluntary waiver under the ADEA are set forth in the statute itself. No such provision exists in the MHRA. It is not for the Court to effectively amend a state statute by reading in provisions that the legislature has not enacted.
In support of their allegations of duress, Plaintiffs assert the following facts: (1) they were discharged without advance warning; (2) the discharge shattered their financial and retirement plans; (3) immediately after being discharged, Plaintiffs were informed that they would not receive any severance money unless they signed a waiver of all legal claims; (4) Plaintiffs did not understand the terms of the waiver; and (5) Plaintiffs did not consult with attorneys prior to signing the waiver.
Whether the alleged facts are sufficient to support a claim of duress is a question of law for the court. Anselmo v. Manufacturers Life Insurance Co., 771 F.2d 417, 419 (8th Cir.1985). Whether the alleged facts actually exist is a matter for the fact finder. Id. at 419-20. To invalidate the Release on the grounds of economic duress, Plaintiffs must show that "the other party's wrongful acts caused [them] to be `bereft of the quality of mind essential to the making of a contract'" Anselmo, 771 F.2d at 420 (quoting Wolf v. St. Louis Public Service Co., 357 S.W.2d 950, 055 (Mo.Ct.App.1962)). See also Schmalz v. Hardy Salt Co., 739 S.W.2d 765, 768 (Mo.Ct.App.1987).
Financial distress that was not caused by the party seeking to enforce the contract does not constitute duress. Schmalz, 739 S.W.2d at 768. Nor can a claim of duress succeed where there is "knowledge of the facts and opportunity for investigation, deliberation and reflection." Aurora Bank v. Hamlin, 609 S.W.2d 486, 488 (Mo.Ct.App.1980). See also Ensign v. Jewish Aged, 274 S.W.2d 502, 508 (Mo.Ct.App. 1955); Weisert v. Bramman, 358 Mo. 636, 216 S.W.2d 430, 434 (1948).
The facts of the instant case are very similar to those presented in Schmalz. The plaintiff in Schmalz, was terminated from his employment with defendant Hardy Salt Co. Plaintiff signed a release of all claims arising from the employment relationship. In consideration of the release, Hardy Salt Co. continued plaintiff on the payroll for an additional *879 six weeks and agreed to pay him severance pay upon termination. Plaintiff later asserted that the release had been executed under economic duress.
The court rejected plaintiff's claim for several reasons. The Court determined that "[t]here was no wrongful conduct by Hardy Salt in threatening to discharge plaintiff pursuant to its interpretation of the contract" and, therefore, "plaintiff's financial necessity was not caused by his employer as that concept is viewed in a claim of duress." Schmalz, 739 S.W.2d at 768. The court also noted that plaintiff, an experienced businessman, took sufficient time to consider the agreement, consulted with counsel and understood the terms of the document he was signing.
Plaintiffs urge the Court to apply the reasoning of Carr v. Armstrong Air Conditioning, Inc., 817 F.Supp. 54 (N.D.Ohio 1993). In Carr, the court held that plaintiff had asserted facts sufficient to state a claim of economic duress when plaintiff asserted that he had been terminated without warning and informed that if he did not sign a release that same day he would be terminated without severance pay.[3]Carr, 817 F.Supp. at 58.
Although Plaintiffs in the instant case were not businessmen and did not consult attorneys regarding the terms of the Release, the Court nonetheless finds that the facts of this case are most analogous to the facts of Schmalz for the purpose of determining whether Plaintiffs have stated a viable claim of economic duress. Plaintiffs were given ample opportunity to reflect on the terms of the Release and were also given seven days after signing to revoke their agreement. Under these circumstances, the Court finds that Plaintiffs' state of mind upon signing the contract cannot be attributed to Defendants. Therefore, the Court will grant Defendants' Motion for Summary Judgment insofar as it applies to Plaintiffs' state law claims.
IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [Docket No. 8] is DENIED with respect to Plaintiffs' federal age discrimination claims and GRANTED with respect to Plaintiffs' claims under the MHRA.
NOTES
[1] Defendants contend that Plaintiffs had the required information because they attended a meeting of all discharged employees. In view of the explicit statutory requirement that persons selected for an employment termination program receive information about the program in writing, the Court finds that Plaintiffs' actual knowledge is irrelevant.
[2] Because the Court finds that the waiver was not knowing and voluntary due to Defendants' failure to comply with the requirements of Subsection H of 29 U.S.C. § 626(f)(1), it is not necessary to determine the application of subsections A and E to the Release documents.
[3] Carr was decided under Ohio law which provides that "[a] person who claims to have been a victim of economic duress must show that he or she was subjected to `... a wrongful or unlawful act or threat, ...' and that it `... deprive[d] the victim of his unfettered will.'" Carr, 817 F.Supp. at 58 (quoting Blodgett v. Blodgett, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990) (citations omitted)).