952 F.Supp. 635 (1997)
Ace EYE, Plaintiff,
v.
FLUOR CORPORATION, et al., Defendants.
No. 4:95-CV-1323 CAS.
United States District Court, E.D. Missouri, Eastern Division.
January 21, 1997.
*636 *637 Richard F. Nash, Sr., Gary K. Burger, Jr., Brasher Law Firm, St. Louis, MO, Kurt D. Lord, Cremeens and Associates, Belleville, IL, for Ace L. Eye, plaintiff.
John H. Quinn, III, Jennifer L. Arendes, Armstrong and Teasdale, St. Louis, MO, for Fluor Corporation, defendant.
Michael P. Burke, Kelley Field Farrell, Bryan Cave, St. Louis, MO, for Doe Run Resources Corp., defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on the motion for summary judgment of remaining defendant The Doe Run Resources Corporation, d/b/a "The Doe Run Company" ("Doe Run").[1] Plaintiff opposes the motion.
Plaintiff filed this action in July 1995 asserting that his employment with Doe Run was terminated in April 1991 in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., as modified by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. §§ 626 et seq. Doe Run moves for summary judgment on the grounds that plaintiff signed an effective release of his ADEA claims, and in any event, the applicable statute of limitations has run.

I. Standard of Review.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).
Once the burden shifts, the non-moving party may not rest on the allegations in its *638 pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11; Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.
In support of the motion for summary judgment, the parties have filed affidavits and exhibits. In passing on a motion for summary judgment, this Court is required to view the facts set forth in these documents in a light most favorable to the non-moving party and the Court must give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).

II. Facts.

With the applicable standards in mind, the Court finds the following for purposes of this motion.
Plaintiff Ace L. Eye was an employee of Doe Run, whose employment was terminated on April 8, 1991 as part of a reduction in force ("RIF"). On April 8, 1991, plaintiff was called to a meeting with approximately forty-seven other Doe Run salaried employees. The employees were informed that Doe Run was reducing its total work force by 25%, and all employees in attendance at the meeting were being terminated from employment as part of the reduction. The employees were told that the terminations had nothing to do with their job performance, and Doe Run personnel refused to answer questions concerning how the particular employees had been chosen for the RIF.
At the April 8 meeting, plaintiff was given a notice which scheduled him for an exit interview the next day. At the exit interview, representatives of Doe Run presented plaintiff with a Settlement Agreement and Release (the "Release"), under which plaintiff would receive approximately $12,000.00 in severance pay in return for waiving various legal rights, including those under the ADEA. The Release states, inter alia, that plaintiff acknowledged "he has been advised to consult an attorney and that he fully understands the [Release] and the effect of his signing the [Release]." (Release at 2.) Plaintiff read the Release and signed it at the exit interview. The Release did not contain information regarding the other employees who were also terminated from employment, as set forth in 29 U.S.C. § 626(f)(1)(H) (the "§ 626 information").
Plaintiff was forty-two years old at the time of the termination and had worked for Doe Run for twelve years, most recently as a Mine Foreman. At the April 8, 1991 meeting, plaintiff had no impression of the ages of the employees who had been terminated, although he knew some people personally or by sight. Shortly after the meeting, plaintiff became aware that the other Mine Foreman at the Buick Mine, who was twenty-eight years old, was retained by Doe Run.
Executives of Doe Run were contemplating a significant reduction in force for at least a month prior to April 8, 1991. During that time, Doe Run's vice president of human resources, James Stack, was aware of federal and state discrimination laws and sought advice of counsel in part out of concern for violating the applicable laws. At an executive committee meeting held March 18, 1991, Doe Run executives discussed potential remedies if discrimination laws were violated during a RIF. Mr. Stack made the decision not to provide the § 626 information to the employees terminated in the RIF based on his knowledge and interpretation of the statute. Mr. Stack knew that by failing to provide the § 626 information, there was a risk that former employees who had signed the Release could still pursue age discrimination claims. Prior to the RIF, Doe Run had generated reports containing the § 626 information *639 concerning the forty-eight salaried employees whose jobs were to be terminated, including their ages as of April 8, 1991.
Plaintiff took no action to pursue a possible age claim until 1995, although he had heard rumors other employees terminated on April 8, 1991 had sued Doe Run. Plaintiff believed these employees had not signed the Release. In the spring of 1995, plaintiff encountered another former Doe Run employee, Larry Yount, who advised plaintiff to call his attorney, and gave plaintiff the telephone number of the Brasher Law Firm. The next day, plaintiff's wife called the firm on his behalf, and was told by someone there that plaintiff did not have a case at that time. A couple of weeks later, plaintiff saw Ed Green, another former Doe Run employee, who urged plaintiff to call the law firm again.
Plaintiff called the law firm again, and eventually met with an attorney in May 1995. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on May 13, 1995. This lawsuit was filed on July 19, 1995.

III. Discussion.

A. Validity of Release.
Doe Run's first argument is that the Release signed by plaintiff on April 9, 1991 in return for severance pay bars plaintiff's ADEA claims. Doe Run also contends that even if the Release is determined to be invalid, plaintiff has ratified the Release by retaining the severance pay, and therefore cannot bring this action.
In numerous previous cases, this district has held that the waiver of rights contained in the Release were invalid, as a result of Doe Run's failure to comply with the ADEA and OWBPA. See, e.g., Black v. Fluor Corp., No. 4:95-CV-1219 JCH, slip op. at 10, ___ F.Supp. ____ [1996 WL 827190] (E.D.Mo. Dec. 23, 1996); Jennings v. Doe Run Co., 866 F.Supp. 428 (E.D.Mo.1994); Dane v. Doe Run Co., 865 F.Supp. 581, 584-85 (E.D.Mo. 1994); Burch v. Fluor Corp., 867 F.Supp. 873, 877-78 (E.D.Mo.1994). Because plaintiff executed the Release in connection with an employment termination program, the Release is subject to the requirements of 29 U.S.C. § 626(f)(1)(H). Burch, 867 F.Supp. at 878. The OWBPA provides that:
(1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum 
(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
. . . . .
(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
. . . . .
(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to 
(I) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.
29 U.S.C. § 626(f). The Court agrees that the waiver in the instant case was not knowing and voluntary. The Court has stated before in connection with the Doe Run Release:
Because Defendants did not inform Plaintiffs in writing of any eligibility factors for the termination program, any time limits applicable to such program, the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or *640 organizational unit who are not eligible or selected for the program, Plaintiffs' waiver was not knowing and voluntary for the purposes of the ADEA.
Burch, 867 F.Supp. at 878. Plaintiff received the same information in connection with the Release as did the plaintiff in Burch. Therefore, plaintiff's waiver of his claims under the ADEA was not knowing and voluntary.

B. Ratification.
The issue remains whether plaintiff ratified the invalid Release by retaining the severance pay. Defendant contends that an ADEA release which is otherwise unenforceable for failure to comply with the requirements of § 626 becomes enforceable when an employee accepts the benefits of the release agreement, and thus ratifies the agreement. Plaintiff responds that the language of the OWBPA and the better-reasoned case law, there is no requirement that a plaintiff who has signed a release tender back to the former employer the consideration received, as a precondition to bringing suit. Plaintiff also contends that the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq., are applicable to the Release, and preclude any state-law based ratification claim.
The circuit courts of appeal which have addressed the issue of ratification of an invalid release are divided. The Fourth and Fifth Circuits have held that a release which fails to comply with the requirements of the OWBPA is merely voidable and not void, such that retention of severance pay would ratify a release. See Blistein v. St. John's College, 74 F.3d 1459 (4th Cir.1996); Wamsley v. Champlin Ref. and Chemicals, Inc., 11 F.3d 534 (5th Cir.1993), cert. denied, ___ U.S. ____, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995). These courts have applied general contract principles to find a tender-back requirement for suits challenging ADEA releases, and concluded that an employee's retention of severance benefits after learning a release is voidable constitutes a new promise to honor the waiver despite its flaws.
In contrast, the Seventh and Eleventh Circuits have held that severance agreements which failed to comply with the OWBPA are invalid even though the plaintiffs retained severance benefits. See Oberg v. Allied Van Lines, Inc., 11 F.3d 679 (7th Cir.), cert. denied, 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1993); Forbus v. Sears Roebuck & Co., 958 F.2d 1036, 1041 (11th Cir.), cert. denied, 506 U.S. 955, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992). The reasoning of Oberg and Forbus is largely derived from a decision of the United States Supreme Court in Hogue v. Southern R. Co., 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968). In Hogue, an action under the Federal Employers' Liability Act ("FELA")[2], the Supreme Court held that an employee who previously executed a release need not, as a precondition to bringing suit under the FELA, tender back to the employer any consideration received for executing the release. Id. at 517, 88 S.Ct. at 1151-52. Applying federal common law, the Court held that such a rule would be incongruous with the general policy of the FELA. Id. Rather, the Court stated that benefits paid should be deducted from any award to the employee. Id. at 518, 88 S.Ct. at 1152.
In Oberg and Forbus, the reasoning of Hogue was applied to ADEA cases.[3] After analyzing the policies behind both statutory schemes, the Seventh and Eleventh Circuits determined that no tender back requirement existed under the ADEA and the retention of benefits during the pendency of a lawsuit does not constitute ratification of an invalid release. See Oberg, 11 F.3d at 683-84;[4] *641 Forbus, 958 F.2d at 1040-41. The Seventh Circuit in Oberg also focused on the OWBPA's displacement of common law doctrines, and concluded that the dominant policy of the OWBPA is to prevent the loss of rights under the ADEA unless the decision is entirely voluntary. This analysis has been followed by a number of district courts. See, e.g., E.E.O.C. v. Sara Lee Corp., 923 F.Supp. 994 (W.D.Mich.1995); Soliman v. Digital Equipment Corp., 869 F.Supp. 65 (D.Mass. 1994); Carr v. Armstrong Air Conditioning, Inc., 817 F.Supp. 54 (N.D.Ohio 1993); Isaacs v. Caterpillar, Inc., 765 F.Supp. 1359, 1365 (C.D.Ill.1991).
Recently, a divided Sixth Circuit panel concurred in the analysis of Oberg and Forbus. See Raczak v. Ameritech Corp., 103 F.3d 1257, (6th Cir.1997). The majority in Raczak found compelling the reasoning of the district court:
It would be inequitable and contrary to the protective nature of the OWBPA to require plaintiffs to tender back the consideration received in exchange for executing waivers where the waivers were obtained without compliance with the OWBPA. Furthermore, it would deter meritorious challenges to releases. Workers who are forced out in an involuntary termination "are unlikely to be able to put their severance payments aside for future `tenders' or to be able to come up with the money to make such a tender at such later time as they acquire grounds to believe that a successful lawsuit might be mounted in connection with their retirements."
Raczak, 103 F.3d at 1270 (quoting Raczak v. Ameritech Corp., 1994 WL 780899 at *9-10 (E.D.Mich.1994)). The Sixth Circuit stated, "Rather than a bar to suit, a release should be considered as a factor that would reduce the judgment amount received by a plaintiff upon bringing suit." Id. at 1270.
The Court is persuaded by the reasoning of Oberg, Forbus and Raczak, and rejects a tender-back requirement as a prerequisite to suit under the ADEA. Further, in Black v. Fluor Corp., No. 4:95-CV-1219 JCH, ___ F.Supp. ___ [1996 WL 827190] (E.D.Mo. Dec. 23, 1996), Chief Judge Hamilton recently addressed the issue of ratification under the ADEA in connection with the same release at issue in the present case, and also rejected Doe Run's ratification argument. The Court notes as did Judge Hamilton that contradictory authority exists in this district. Unlike Black, however, the decisions which follow the Fourth and Fifth Circuit's view discuss the issue of ratification in dicta, and concern markedly different factual situations than the present case, and the Court will not follow them.[5] Should plaintiff ultimately be successful, the benefits he has already received from Doe Run will reduce any recovery.
Defendant Doe Run's motion for summary judgment on the issue of ratification will therefore be denied.[6]

C. Statute of Limitations.
Doe Run also contends that plaintiff did not timely file a charge of discrimination *642 with the EEOC, and his ADEA claim is therefore barred. It is undisputed that plaintiff did not file a charge of discrimination with the EEOC until more than four years had passed after his termination from employment. Plaintiff contends, however, that under the doctrines of equitable tolling and equitable estoppel, the ADEA limitations period should be tolled to render his filing timely. In the alternative, plaintiff contends he should be allowed to "piggyback" his charge of discrimination on those of other Doe Run employees which were timely filed.
Under the ADEA, a plaintiff has 180 days to file a charge of discrimination with the EEOC after the date of the "alleged unlawful practice". 29 U.S.C. § 626(d)(2). Because Missouri also has a law prohibiting age-based discrimination, a plaintiff has 300 days from the date of the allegedly discriminatory action to file an EEOC charge. Id. The timely filing of a charge of discrimination with the EEOC is not a jurisdictional prerequisite to an action under the ADEA, but rather is treated like a statute of limitations and is subject to waiver, estoppel and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132-33, 71 L.Ed.2d 234 (1982); Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1327 (8th Cir.1995). If a plaintiff fails to file a timely charge, his action is barred unless he can demonstrate that the limitations period is subject to equitable modification. Dring, 58 F.3d at 1327.
In Dring, the Eighth Circuit delineated the distinctions between the principles of equitable tolling and equitable estoppel. "Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." Dring, 58 F.3d at 1328 (quoting Chakonas v. City of Chicago, 42 F.3d 1132, 1135-37 (7th Cir.1994)). Equitable tolling does not require any misconduct on the part of the defendant. Dring, id.; see also Anderson v. Unisys Corp., 47 F.3d 302, 306-07 (8th Cir.) (stating that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant), cert. denied, ___ U.S. ____, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995). "To determine whether a plaintiff in fact lacked vital information, a court should ask whether a reasonable person in the plaintiff's position would have been aware that he had been fired in possible violation of the ADEA." Dring, 58 F.3d at 1329 (quoting Chakonas, 42 F.3d at 1135).
In contrast, the doctrine of equitable estoppel "comes into play when a defendant takes active steps to prevent a plaintiff from suing on time." Dring, id. (quoting Chakonas, 42 F.3d at 1136). The Eighth Circuit has repeatedly held that the EEOC limitations period will not be modified on the basis of equitable estoppel unless "the employee's failure to file in timely fashion is the consequence of either a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Dring, id. (citations omitted). "Thus, when a plaintiff is aware of the existence of a possible ADEA violation but is lulled or tricked into letting the EEOC filing deadline pass because of some employer misconduct above and beyond the wrongdoing upon which the plaintiff's claim is founded, the appropriate doctrine to invoke would be equitable estoppel." Dring, 58 F.3d at 1329.
In this case, plaintiff asserts that both equitable tolling and equitable estoppel should apply. Plaintiff's contentions are intertwined with the argument that the Release is invalid. Plaintiff asserts that despite all due diligence, he was unable to obtain vital information bearing on the existence of his claim for age discrimination, e.g., the names, ages and job titles of those chosen for the RIF, from which he could have discerned that age may have improperly played a role in the termination of his employment. Plaintiff also asserts that he did not learn the Release was invalid for failure to provide information mandated by the ADEA and OWBPA, or that he retained rights under the ADEA and could file a charge of discrimination, until he met with counsel in May 1995.
Plaintiff also contends that Doe Run acted in a manner which it should unmistakably have understood would cause the employees terminated in the RIF, including plaintiff, to *643 delay filing an EEOC charge. Specifically, plaintiff contends that Doe Run used the opportunity of a low lead price as an excuse to eliminate the jobs of many of its older workers, and then knowingly and purposely failed to comply with the ADEA and OWBPA when it omitted the § 626 information from the Release. Plaintiff contends that Doe Run's withholding of required information, combined with the purported waiver of his ADEA claims contained in the Release, caused him to delay filing an EEOC charge.
The Court concludes that genuine issues of material fact remain concerning whether the EEOC limitations period should be modified either by equitable tolling or equitable estoppel. These issues are properly submitted to the jury. See, e.g., Beshears v. Asbill, 930 F.2d 1348, 1351-52 (8th Cir.1991); Walker v. St. Anthony's Medical Center, 881 F.2d 554, 557 (8th Cir.1989).[7] Therefore, Doe Run's motion for summary judgment on the issue of the statute of limitations will be denied.[8]
Because the Court has determined that factual issues remain as to whether equitable tolling or equitable estoppel principles may serve to modify the applicable limitations period, it would be premature to address plaintiff's alternative argument that he should be permitted to utilize the single filing rule to "piggyback" his charge onto the timely-filed charges of other Doe Run employees.[9] Therefore, this aspect of defendant's motion for summary judgment will be denied without prejudice.

IV. Conclusion.

For the foregoing reasons, the Court concludes that plaintiff's ADEA claims are not barred by his execution of the Release or his retention of severance pay thereunder. Further, based upon the record before the Court, genuine issues of material fact exist concerning whether principles of equitable tolling or equitable estoppel should apply to modify the EEOC limitations period in this action. Doe Run's motion for summary judgment should therefore be denied in all respects.
Accordingly,
IT IS HEREBY ORDERED that defendant The Doe Run Resources Corporation's motion for summary judgment is DENIED.
NOTES
[1] Plaintiff's claims against the other defendant, Fluor Corporation, were passed for settlement on December 18, 1996.
[2] See 45 U.S.C. §§ 51 et seq.
[3] Other courts have applied the Supreme Court's reasoning in Hogue to bar tender-back requirements as a prerequisite to actions involving federal statutes other than the FELA. See, e.g., Smith v. Pinell, 597 F.2d 994, 996 (5th Cir.1979) (holding there is no tender requirement under the Jones Act); Wahsner v. American Motors Sales Corp., 597 F.Supp. 991, 998 (E.D.Pa.1984) (holding there is no tender-back requirement under the Automobile Dealers' Day in Court Act). "These cases show that the application of the Hogue decision is not limited to the FELA context, and its denial of the tender-back requirement can legitimately be extended to other remedial statutes." Raczak v. Ameritech Corp., 103 F.3d 1257, 1270 (6th Cir.1997).
[4] The Court notes that another panel of the Seventh Circuit appears to question the correctness of the rationale underlying the decisions in Hogue and Oberg. See Fleming v. United States Postal Service AMF O'Hare, 27 F.3d 259, 260-61 (7th Cir.1994) (holding that settlement was final under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. §§ 2000e, et seq., and the Rehabilitation Act of 1973, §§ 501 et seq., 29 U.S.C. §§ 791 et seq., in the absence of a tender back of consideration received), cert. denied, 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 642 (1995). The court in Fleming acknowledged, however, that under the FELA and ADEA "the common law rule requiring tender as a prerequisite to rescission may have to give way." Fleming, 27 F.3d at 261. Oberg remains valid precedent in the Seventh Circuit.
[5] In Bilton v. Monsanto Co., 947 F.Supp. 1344 (E.D.Mo.1996), and Rivers v. Northwest Airlines, Inc., 1995 WL 888612 at *3 (E.D.Mo.), aff'd without opinion, 72 F.3d 133 (8th Cir.1995), Judges Limbaugh and Gunn stated in dicta that retention of severance pay barred ADEA claims, citing Wamsley with approval and finding Oberg "unpersuasive". In Bilton, the court held that plaintiff's EEOC charge was untimely, and noted the "parties do not seriously dispute that the OWBPA requirements were met." Bilton, 947 F.Supp. at 1353. In Rivers, the court held as a matter of law that the plaintiff had not been constructively discharged, and noted the alleged involuntariness of the release at issue was not the result of noncompliance with the requirements of the OWBPA. Rivers, 1995 WL 888612 at *3, n. 3. Thus, these decisions are readily distinguishable from the present case.
[6] Because of this ruling, the Court does not address plaintiff's additional argument that ERISA precludes ratification of the Release.
[7] The Court does not agree with defendant's assertion that Dring requires a court to resolve disputed factual issues necessary to a determination whether equitable tolling or equitable estoppel applies.
[8] Defendant cites LaCroix v. The Detroit Edison Co., 1996 U.S.Dist. LEXIS 10997 (E.D.Mich. June 27, 1996), for the proposition that a defective release does not provide a basis for equitable tolling of the ADEA limitations period. The Court notes that in LaCroix, the plaintiff admitted she had read the waiver and release at issue prior to its execution, and a signed copy of the release produced by defendant stated that plaintiff acknowledged receipt of the list of jobs titles and ages of all retained and deselected employees. Id. at *22. The court held the plaintiff's subsequent hearsay assertion that she did not receive such a list was insufficient to overcome the defendant's documentary proof of her acknowledgement of receipt. Id. at *23. LaCroix is therefore factually distinguishable from the instant case. The Court in independent research has been unable to find any other cases addressing the issue whether a defective release provides a basis for equitable modification of the ADEA limitations period.
[9] Defendant asserts that "no case has ever extended the `piggyback' theory beyond a circumstance where the plaintiff either sought to join or, at least, could have sought to join an existing lawsuit which was based on a timely-filed EEOC charge." (Def.'s Mem. in Supp. of Mot. for Summ. Judg. at 15.) The Court notes that the Second Circuit has stated, "There is ... no reason to require ADEA plaintiffs seeking to benefit from the single filing rule to join preexisting individual suits." Tolliver v. Xerox Corp., 918 F.2d 1052, 1057 (2d Cir.1990), cert. denied, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).