959 F.Supp. 1135 (1996)
Howard BLACK, Plaintiff,
v.
FLUOR CORPORATION, et al., Defendants.
No. 4:95-CV1219 JCH.
United States District Court, E.D. Missouri, Eastern Division.
December 23, 1996.
*1136 Gary Burger, Richard Nash, Brasher Law Firm, St. Louis, MO, for Plaintiff.
Dennis Donnelly, Bryan Cave, St. Louis, MO, for Doe Run, Fluor Corp.

MEMORANDUM AND ORDER
HAMILTON, Chief Judge.
This matter is before the Court on Defendant Doe Run's Motion for Summary Judgment and Defendant Doe Run's Second Motion for Summary Judgment. Plaintiff has responded to these motions. Plaintiff has also filed a Motion to Compel and a Motion for In-Camera Review of Documents, which Defendant has responded to.
Plaintiff Howard Black filed this action on July 5, 1995, asserting that Defendant Doe Run discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621 et seq. Plaintiff contends that on April 8, 1991, he and approximately forty-seven (47) other salaried employees were terminated by Defendant as part of a Reduction in Force (hereinafter "RIF"). Plaintiff further claims that forty-one of the forty-eight terminated employees, including himself, were members of a protected class based on age. Plaintiff asserts that he was employed by the Doe Run Company, a partnership consisting of Doe Run Investment Holding Corporation, St. Joe Minerals Corp., and Leadco Investments, Inc., and that Doe Run Resources Corporation is the Doe Run Company's successor corporation. He further contends that he timely filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").
Defendant denies that it discriminated against Plaintiff, stating that Plaintiff cannot present sufficient evidence to assert a claim for age discrimination. Defendant further contends that Plaintiff failed to file a timely charge of discrimination with the EEOC. Finally, Defendant asserts that Plaintiff's claims are barred by a Settlement and Release of Claims that he signed in order to be eligible for severance pay. Plaintiff asserts that the release is invalid for failure to comply with the requirements of the Older Worker's Benefits Protection Act (hereinafter "OWBPA"), 29 U.S.C. § 626(f).

Motions for Summary Judgment

I. Standard
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. at 2509. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether a genuine issue exists for trial. Id. at 249, 106 S.Ct. at 2510.

*1137 II. Facts

Viewing the facts in the light most favorable to Plaintiff, the Court finds the following for the purposes of this motion.
Plaintiff was an employee of Doe Run Company and was terminated on April 8, 1991, as part of a reduction in force. At the time of the RIF, Doe Run Company was a general partnership, and its general partners were Defendant Doe Run Investment Holding Corporation, Leadco Investments, Inc., and St. Joe Minerals Corporation. All three partners in the Doe Run Company were wholly-owned subsidiaries of Fluor Corporation. Defendant Doe Run Resources Corporation is a successor corporation to two of the three partners.
At the time Plaintiff was terminated, he was 50 years old. (Deposition of Plaintiff Howard Black, pp. 54-59). Plaintiff had worked for Defendant for 27 years, and at the time of his termination he was employed as a Core Inspector at Defendant's Southeastern Missouri Facility. (Pltff's Depo., pp. 50, 59). At that time, Defendant employed two Core Inspectors in its Geology/Exploration division. (Pltff's Depo., pp. 50, 59). The other Core Inspector was Jim Davis, who was four years older than Plaintiff and who had plans to retire soon. (Deposition of Lanny Evans, p. 68). Defendant's notes indicate that Plaintiff would be terminated and Mr. Davis would retire shortly. (Memo in Opposition to Defendant's Second Motion for Summary Judgment, Exh. 9).
In determining whom to terminate in the RIF, Defendant had certain goals regarding the type of employee it wanted to retain, but there was no structured approach to the terminations. (Deposition of John Kennedy, p. 32). No one reviewed performance evaluations or personnel files in determining whom to terminate. (Evans Depo., p. 62). No one actually told Mr. Evans how to select the salaried work force for termination or gave him any criteria for that task. (Evans Depo., p. 55). Mr. Evans was simply instructed to reduce the salaried work force by twenty-five percent across the board. (Evans Depo., p. 55). Mr. Evans was primarily responsible for selecting Mr. Black for termination. (Kennedy Depo., p. 18). Defendant generally wanted to retain those individuals who had initiative, who would take on additional responsibilities, who would be dependable, loyal, supportive of the management viewpoint, who were flexible, and who were versatile. (Kennedy Depo., p. 116; Deposition of John FitzSimmons, pp. 19-20). Several of the reports generated by Defendant identified those who were to be terminated and included each such employee's age and years of service. (Pltff's Opp. to 2d Mtn. for S.J., Exh. 9).
Although Plaintiff was terminated in connection with a RIF, his position became available again in the Fall of 1991, about six months after Plaintiff's termination. Plaintiff interviewed for his old position, but Defendant hired Robert Powell instead. (Pltff's Depo., pp. 114-16). Mr. Powell was younger than Plaintiff and had no experience as a Core Inspector before Defendant hired him to fill Plaintiff's old position. (Pltff's Depo., pp. 114-16). Defendant never indicated to Plaintiff that his performance was poor or that performance was any part of his termination. (Pltff's Depo., p. 57). In fact, Defendant indicated just the opposite at the meeting on April 8, 1991, when Plaintiff was informed of his termination. (Pltff's Depo., p. 57 and exh. C-2). Defendant specifically stated that none of the individuals were being terminated because of poor performance. (Pltff's Depo., pp. 56-62). When Mr. Davis retired, Plaintiff was not notified that a Core Inspector position was available, and Defendant hired a younger man. (Kennedy Depo., pp. 185-89).
Additionally, Plaintiff has presented statistical evidence regarding the ages of those employees who were terminated in connection with the April 8, 1991 RIF in comparison with the ages of the employees as a whole and the employees who were retained after the RIF. (Report of Michael J. Piette, Ph.D.). Plaintiff's statistics indicate that the average age of the employees terminated was significantly older than the average age of those retained after the RIF. (Piette Report, p. 7). Dr. Piette also concluded that the pattern of terminations of a disproportionate number of employees over 40 did not occur by chance alone. (Piette Report, p. 13).
*1138 In October 1991, within 180 days of being informed of his termination, Plaintiff went to an EEOC office with Jim Green, another employee who had been terminated at the same time. (Pltff's Depo., p. 77). Plaintiff attempted to file a charge of discrimination with the EEOC but was informed that he could not. (Pltff's Depo., pp. 85-88). The EEOC employee informed Plaintiff that because Jim Davis was older than Plaintiff and had not been terminated, Plaintiff could not file an age discrimination charge with the EEOC. (Pltff's Depo., pp. 85-91). Plaintiff did not file a charge of discrimination until after he met with his current counsel. (Pltff's Depo., pp. 105-07). He then filed a charge of discrimination on April 1, 1995. (Pltff's Depo., pp. 108-09).
At the time of his termination, Plaintiff was told that in order to receive his severance pay he would have to sign a release. Plaintiff signed the release and accepted his severance pay. (Pltff's Depo., pp. 70-72). The release did not contain information regarding the other employees terminated as set out in 29 U.S.C. § 626(f)(1)(H). (Deposition I of James Stack, pp. 69-70; Stack Depo. II, p. 4).

III. Analysis

A. Doe Run's Motion for Summary Judgment
Defendant asserts that Plaintiff's claims are barred by the release he signed and that Plaintiff did not file a timely charge of discrimination with the EEOC. Plaintiff argues that the waiver of his claims is invalid because of Defendant's failure to include the information required by 29 U.S.C. § 626(f)(1)(H). Plaintiff further claims that because the EEOC misinformed him and would not let him file a charge, the limitations period should be tolled.
The timely filing of a charge of discrimination with the EEOC is not a jurisdictional prerequisite for court action, rather it is a requirement that, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).[1] Under both the ADEA and Title VII, a plaintiff has 180 days to file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). In a deferral state, such as Missouri, where a state agency is involved a plaintiff has 300 days from the date of the allegedly discriminatory action to file such a charge. 42 U.S.C. § 2000-5(e)(1); 29 U.S.C. § 626(d)(2). The 300-day deadline commences when the employer notifies the employee of the allegedly discriminatory decision, not when that decision takes effect. Delaware College v. Ricks, 449 U.S. 250, 259, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); Wilson v. Westinghouse Electric Corp., 838 F.2d 286, 288 (8th Cir.1988).
In the instant case Plaintiff did not actually file his charge of discrimination with the EEOC until over four years had passed. Plaintiff, however, went to the EEOC office to file a claim within 180 days of being informed that he was terminated. The EEOC officer Plaintiff spoke to refused to let him file a charge, telling him that he could not file it because the person Defendant retained in the Core Inspector's position was older than he.
The concept of equitable tolling applies to the 300-day limit under both Title VII and the ADEA. See Zipes, 455 U.S. at 393, 102 S.Ct. at 1132; Heideman v. PFL. Inc., 904 F.2d 1262, 1265 (8th Cir.1990) (citations omitted), cert. denied, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991). Equitable tolling is only appropriate where the circumstances that caused plaintiff to miss a filing deadline are beyond the plaintiffs control. Heideman, 904 F.2d at 1266 (citing Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir.1989) (Title VII case)). Equitable tolling is permissible in situations other than *1139 those in which some positive misconduct occurs by the party against whom it is asserted. Anderson v. Unisys Corp., 47 F.3d 302, 306 (8th Cir.1995).
It is clear that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant.[] Other circuits, as well as our own, have held that when an administrative agency misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified.
Id. at 306-07.
In Anderson v. Unisys Corp. the plaintiff received a letter from the Minnesota Department of Human Rights in response to his inquiry about filing an administrative charge that stated the plaintiff had one year from the date of the discriminatory action to file a charge with the Minnesota Department of Human Rights. Id. at 306. The letter also informed the plaintiff that if his charge alleged a violation of federal law, the Department would also file it with the EEOC. Id. The letter did not mention that the EEOC filing deadline was 300 days rather than one year. Id. The plaintiff claimed that because the letter misled him to believe that the EEOC filing deadline was also one year, the Court should equitably toll the filing deadline. Id. The Eighth Circuit agreed finding the letter sufficient to equitably toll the statutory limitations period. Id. at 307.
Plaintiff in the instant case experienced a similar situation. He went to the EEOC office within the limitations period to file a charge but was told he could not file it. Plaintiff, given misinformation by the administrative agency, was led to believe that there was nothing more he could do. Because the Eighth Circuit has held that equitable tolling may be justified when an administrative agency misleads a complainant, this Court will toll the limitations period to effectuate Plaintiff's filing on April 1, 1995.[2]
Defendant next contends that Plaintiff's claims are barred by the Settlement Agreement and Release he signed on April 19, 1991, in order to receive his severance pay. Defendant asserts that even if the Release is invalid, a premise with which it does not agree, Plaintiff ratified the Release by keeping the severance money. Defendant cites to cases in the Fourth and Fifth Circuits stating that a release that fails to comply with the requirements of the OWBPA is merely voidable and not void. See Blistein v. St. John's College, 74 F.3d 1459 (4th Cir. 1996); Wamsley v. Champlin Refining and Chemicals, Inc., 11 F.3d 534 (5th Cir.1993). But see Oberg v. Allied Van Lines, Inc., 11 F.3d 679 (7th Cir.1993) (finding severance agreements that failed to comply with the OWBPA invalid even though the plaintiffs retained the severance benefits); Soliman v. Digital Equipment Corp., 869 F.Supp. 65 (D.Mass.1994) (same).
Additionally, in Rivers v. Northwest Airlines, Inc., Judge Gunn, after granting Defendant's Motion for Summary Judgment, found in the alternative that the reasoning of Blistein and Wamsley that Oberg "is unpersuasive" should prevail and adopted it without further discussion. This Court does not necessarily agree that Oberg is unpersuasive, and because Judge Gunn's statement is dicta, the Court declines to follow the reasoning of Blistein and Wamsley. Rather, the Court looks to the prior cases filed in this district against the instant Defendant.
In previous cases against Defendant, this district has held the waiver not to be knowing and voluntary for failure of Defendant to comply with the OWBPA. See Dane v. Doe Run Company, 865 F.Supp. 581, 584-85 (E.D.Mo.1994); Burch v. Fluor Corp., 867 F.Supp. 873, 877-78 (E.D.Mo.1994). "Because Plaintiffs executed the Release in connection with an employment termination program, the Release is subject to the requirements of 29 U.S.C. § 626(f)(1)(H)." *1140 Burch, 867 F.Supp. at 878. The OWBPA provides that
(1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except a provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum
(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
...
(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
...
(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to
(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.
29 U.S.C. § 626(f). The Court agrees that the waiver in the instant case was not knowing and voluntary.
Because Defendants did not inform Plaintiffs in writing of any eligibility factors for the termination program, any time limits applicable to such program, the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program, Plaintiffs' waiver was not knowing and voluntary for the purposes of the ADEA.
Burch, 867 F.Supp. at 878. Plaintiff in the present case received the same information in connection with the release as did the plaintiff in Burch. Therefore, the Court finds that Plaintiff's waiver of his claims under the ADEA was not knowing and voluntary and will deny the motion.

B. Doe Run's Second Motion for Summary Judgment
Defendant moves for summary judgment on the grounds that Plaintiff has failed to establish a prima facie case of age discrimination and that Plaintiff cannot show that its reason for termination is pretextual. The ADEA proscribes employment related discrimination based on age against any individual between the ages of forty and seventy. 29 U.S.C. § 623(a)(1). Plaintiff may show discrimination under the ADEA by either direct or indirect methods of proof. Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991). When a plaintiff produces direct evidence of age discrimination a mixed-motive analysis applies. Plaintiff must prove that age was a "motivating factor" in the employer's decision. Price Waterhouse v. Hopkins, 490 U.S. 228, 247, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir.1993); Beshears v. Asbill, 930 F.2d at 1353. The defendant "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." Beshears, 930 F.2d at 1353 (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989)).
When a plaintiff relies on indirect evidence of discrimination, courts apply the burden shifting standards enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Id. Plaintiff has the initial burden of establishing a prima facie case of discriminatory treatment. Id. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory *1141 reason for discharging the plaintiff. Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The plaintiff retains the ultimate burden of persuasion, however, and must prove that the defendant's asserted reasons are pretextual and that plaintiffs age was a determining factor in the employment action. Saint Mary's Honor Center, 509 U.S. at 506, 113 S.Ct. at 2747.
Summary judgment is appropriate in employment discrimination cases where the plaintiff fails to demonstrate a factual dispute as to each element of the prima facie case. Wilson v. International Business Machines Corp., 62 F.3d 237, 240 (8th Cir.1995) (quoting Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir.1995)). Plaintiff need not prove every element of his case at the summary judgment stage; he "need only show evidence of a material factual dispute." Johnson v. Group Health Plan. Inc., 994 F.2d 543, 545 (8th Cir.1993) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) as basis for reversing summary judgment because plaintiff demonstrated factual dispute under McDonnell Douglas theory). See also Perry v. Kunz, 878 F.2d 1056, 1061-62 (8th Cir.1989) (reversing summary judgment because plaintiff showed factual dispute under Price Waterhouse theory).
In order to establish a prima facie case of age discrimination in the context of a reduction in force, Plaintiff must present evidence showing that (1) he was over 40 years of age, (2) he was performing competently, (3) he was discharged, and (4) he must produce "additional ... evidence that age was a factor in his termination." Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117, 119 (8th Cir.1993); Hall v. American Bakeries Co., 873 F.2d 1133, 1134 (8th Cir.1989); Holley v. Sanyo, 771 F.2d 1161, 1166 (8th Cir.1985). This "additional evidence" could take the form of direct, circumstantial, or statistical evidence. Holley, 771 F.2d at 1166. Plaintiff relies solely on circumstantial evidence, so his case is governed by the McDonnell Douglas line of cases.
Plaintiff has produced evidence indicating that an issue of material fact remains in dispute regarding the fourth element of his prima facie case and whether Defendant's articulated nondiscriminatory reason is a pretext for discrimination. Plaintiff has produced statistical evidence that Defendant discriminated based on age sufficient to meet his prima facie case. See Goetz v. Farm Credit Services, 927 F.2d 398, 406 (8th Cir. 1991) (sufficiently substantial statistical disparities raise an inference of age discrimination). Additionally, Plaintiff has presented evidence that Defendant's decision-makers did not use clear, objective criteria in determining who to terminate in connection with the RIF. Furthermore, Plaintiff's position became available within six months of his termination, and although Plaintiff interviewed for his old position, Defendant hired a younger man with no experience as a core inspector. This evidence that Defendant's RIF was a pretext for age discrimination creates a factual dispute. Finally, the fact that Defendant retained an older employee merely challenges Plaintiff's evidence, because exhibits filed with Plaintiffs Opposition to Defendant's second motion for summary judgment have the word "retire" next to Mr. Davis' name. When Mr. Davis did retire, Plaintiff was not informed that a core inspector position had become available, and a younger man was hired.
Plaintiff has presented sufficient evidence to withstand Defendant's summary judgment motion. Therefore, the Court will deny Defendant's second motion for summary judgment.

Discovery Motions

I. Plaintiff's Motion to Compel
Plaintiff seeks to compel responses to interrogatories 1(b), 2, 4, 5, 9, 12, 13, and 16 and responses to production requests 2, 3, 4, 11, 12, 31, and 33 propounded on Defendant. Defendant has indicated that it has provided the requested information requested in these interrogatories through various means with the exception of the information requested in interrogatory 5 and document requests 3 and *1142 4. Defendant asserts that the information sought in interrogatory 5 and document requests 3 and 4 relates solely to the sale of Doe Run in April 1994, three years after the asserted age discrimination, and is therefore irrelevant to any issues in the instant case. The Court agrees and will deny the motion with respect to interrogatory 5 and document requests 3 and 4 and will deny as moot the motion with respect to interrogatories 1(b), 2, 4, 9, 12, 13, and 16 and document requests 2, 11, 12, 31, and 33. Plaintiff is also referred to the Court's November 8, 1996 ruling on discovery issues.

II. Plaintiff's Motion for In-Camera Review of Documents
Plaintiff's Motion for In-Camera Review of Documents pertains to responses Plaintiff received from Defendant regarding Plaintiff's request for production of documents number 32. Request 32 asks for drafts of the documents given to Plaintiff in connection with the RIF. Defendant asserted the attorney-client privilege and produced a privilege log indicating documents related to conversations and correspondence between Defendant's representative James Stack and Defendant's attorneys at Bryan Cave. Plaintiff contends that Mr. Stack's deposition testimony constitutes a waiver of the privilege. Additionally, Plaintiff contends that because Defendant's attorneys prepared the release, and because the release's validity is at issue, Defendant has waived the privilege. Plaintiff asserts that these actions equate to an implied assertion of the advice of counsel defense.
Defendant, however, asserted the privilege during deposition testimony. Based on Defendant's properly asserted privilege and the Court's Order of November 8, 1996, the Court will deny the motion for in-camera review.
In accordance with the foregoing,
IT IS HEREBY ORDERED that Defendant Doe Run's Motion for Summary Judgment [docket # 36] is DENIED.
IT IS FURTHER ORDERED that Defendant Doe Run's Second Motion for Summary Judgment [docket # 45] is DENIED.
IT IS FURTHER ORDERED that Plaintiff's Motion to Compel [docket # 42] is DENIED in part and DENIED as moot in part.
IT IS FURTHER ORDERED that Plaintiff's Motion for In-Camera Review of Documents [docket # 43] is DENIED.
NOTES
[1] Recognizing that the law may be unclear on this issue, the Supreme Court in Zipes explained that

[a]lthough our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases, and as or more often in the same or other cases, we have referred to the provision as a limitations statute.
455 U.S. at 395, 102 S.Ct. at 1133. (citations omitted).
[2] Defendant also contends that because Plaintiff contacted an attorney in 1993 about his termination, the Court should not toll the limitations period to April 1, 1995. The Court declines to conduct an inquiry into whether Plaintiff discussed his claims of discrimination and whether the attorney he contacted in 1993 gave him any advice about filing a charge with the EEOC, because such an inquiry would require the Court to invade the communications between an attorney and his client. Such communications are the core of the attorney-client privilege.