120 F.3d 598
 74 Fair Empl.Prac.Cas. (BNA) 1875,
74 Fair Empl.Prac.Cas. (BNA) 769,
71 Empl. Prac. Dec. P 44,883,
21 Employee Benefits Cas. 1433
Ronald H. HOWLETT; Graves B. Ivey; Siegfried K. Konetzny;
Jeffrey E. McLaughlin; Homayoon Meshginpoosh; Terry
Phillips; Edward Rinckel; Frederick C. Roozen;
Christopher R. Ryan; Rene H. Schiegg; Fred Wright,
Plaintiffs-Appellees,
v.
HOLIDAY INNS, INC., a Tennessee corporation, Defendant-Appellant.
 No. 95-6236.
 United States Court of Appeals,
Sixth Circuit.
 Argued: Sept. 18, 1996.
Decided: Aug. 5, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 9, 1997.
 
 Rudy J. Huizenga, (briefed), Huizenga, Hagan, Hergt & Rivers, Detroit, MI, Donald A. Donati, Donati & Associates, Memphis, TN, Gerald D. Wahl, (briefed), Detroit, MI, Beth M Rivers, (argued and briefed), Wahl & Rivers, Detroit, MI, for Plaintiffs-Appellees.
 Donald A. Donati, Donati & Associates, Memphis, TN, Gerald D. Wahl, (briefed), Detroit, MI, Beth M. Rivers, (argued and briefed), Wahl & Rivers, Detroit, MI, for Plaintiff-Appellee Fred Wright.
 Thomas L. Henderson, (briefed), Frederick J. Lewis, (argued and briefed), Rhonda M. Taylor, (briefed), McKnight, Hudson, Lewis & Henderson, Memphis, TN, for Defendant-Appellant.
 Before: GUY and RYAN, Circuit Judges; JARVIS, Chief District Judge.*
 OPINION
 RYAN, Circuit Judge.
 
 
 1
 We are called upon to decide whether terminated employees who sue their former employers under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, must first tender back any portion of the incentive payment they received for their general promise not to sue on any matter relating to the termination. We hold that because each "separation and release agreement" signed by the plaintiffs does not contain the minimum information required by the ADEA to be enforceable, it cannot subsequently be validated by the employees by retaining the consideration received for the release. Therefore, we further hold that plaintiffs may prosecute their ADEA action without returning any of the severance money given them by defendant. We shall affirm the district court's order denying summary judgment.I.
 
 
 2
 Plaintiffs are former upper-level management employees of Holiday Inns, Inc. In 1991, Holiday Inns was acquired by a British corporation, and after a corporate restructuring, plaintiffs lost their jobs. Each plaintiff signed an individual separation and release agreement in exchange for an unspecified sum of money. The agreement provides, in pertinent part:
 
 
 3
 Employee forever and unconditionally releases the Released Parties from any and all claims ... related in any way to anything occurring up to and including the date hereof. Without limiting the generality of the foregoing, this Agreement applies to any and all claims which in any way result from, arise out of, or relate to Employee's employment, termination or resignation from employment with the Company or any of the Released Parties, including but not limited to, any and all claims which could have been asserted under any fair employment, contract or tort laws, ordinance [sic], including Title VII of the Civil Rights Act of 1964, the Tennessee Anti-Discrimination Act, the Employee Retirement Income Security Act, or under any of the Company's employee benefit, compensation, bonus, performance, award, severance, or vacation pay plans....
 
 
 4
 Each plaintiff was instructed that he had 72 hours to sign and return the agreement in order to be eligible for the incentive. Nowhere does the agreement explicitly refer to ADEA claims.
 
 
 5
 In 1992, plaintiffs sued, alleging that their termination violated the ADEA; however, they did not return any portion of the incentive payments that they had received from Holiday Inns or offer to do so. The defendant moved for summary judgment, arguing that, even if the release is defective under the ADEA, plaintiffs ratified it by keeping the incentive money they were paid and are therefore barred from pursuing any employment-related claim. The district court held otherwise, reasoning that the purposes of the ADEA would be frustrated by a tender-back requirement. Recognizing the split among the circuits on this question and the absence of controlling authority in this circuit, the district court then certified its order denying summary judgment for interlocutory appeal.
 
 II.
 A.
 
 6
 Under the Older Workers Benefit Protection Act (OWBPA) amendment to the ADEA, there are eight minimum requirements an ADEA release must meet before it can be considered "knowing and voluntary." 29 U.S.C. § 626(f). Paraphrasing, they are:
 
 
 7
 (1) The release must be written in a manner calculated to be understood by the employee signing the release, or the average individual eligible to participate;
 
 
 8
 (2) the release must specifically refer to the ADEA;
 
 
 9
 (3) the release must not purport to encompass claims that may arise after the date of signing;
 
 
 10
 (4) the employer must provide consideration for the ADEA claim above and beyond that to which the employee would otherwise already be entitled;
 
 
 11
 (5) the employee must be advised in writing to consult with an attorney;
 
 
 12
 (6) the employee must be given at least 21 or 45 days to consider signing, depending on whether the incentive is offered to a group;
 
 
 13
 (7) the release must allow the employee to rescind the agreement up to 7 days after signing; and
 
 
 14
 (8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible (or selected) for the program, and the corresponding information relating to employees in the same job titles who were not eligible (or not selected) for the program.
 
 
 15
 29 U.S.C. § 626(f)(1). Holiday Inns acknowledges that none of the foregoing requirements was met with respect to the release in question, save possibly the first. Thus, under the terms of the ADEA, the release signed by the plaintiffs was not knowing and voluntary; therefore, it was not valid.
 
 
 16
 Nevertheless, Holiday Inns argues, plaintiffs have subsequently knowingly and voluntarily ratified the defective contract of release by not returning the consideration paid for it. Holiday Inns relies upon decisions in the Fourth and Fifth Circuits in which these courts have read the OWBPA amendment as retaining the common-law doctrine of ratification. See Blistein v. St. John's College, 74 F.3d 1459, 1465-66 (4th Cir.1996); Blakeney v. Lomas Info. Sys., Inc., 65 F.3d 482, 485 (5th Cir.1995), cert. denied, 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996). These courts have ruled that, despite signing a release that does not comply with the ADEA, an employee who keeps the incentive paid for the ADEA waiver has ratified the contract, and is thereby bound by it. Blistein, 74 F.3d at 1465-66; Blakeney, 65 F.3d at 485. These courts reason that the OWBPA amendment merely codified the common-law elements of "knowing and voluntary," but left the doctrine of ratification intact. See Blistein, 74 F.3d at 1465-66; Wamsley v. Champlin Ref. and Chems., Inc., 11 F.3d 534, 538-39 (5th Cir.1993).
 
 
 17
 Additionally, the Wamsley court looked to the OWBPA's legislative history to determine that applying the ratification doctrine was consistent with the purposes of the ADEA. That is, the congressional committee that proposed the OWBPA amendment to the ADEA discussed several of the common-law instances in which a voidable contract could be ratified, such as instances in which the original contract was procured through fraud, duress, coercion, or mistake, id. at 539 n. 8, thus suggesting that Congress viewed noncompliance with the OWBPA requirements in the same light, id. Also, the Wamsley court reasoned that, if employees were excused from tendering back the consideration paid for waiving ADEA claims when such claims are later brought anyway, employers would be deterred from offering private agreements which settle potential claims, thereby defeating one of the purposes of the ADEA. Id. at 539.
 
 
 18
 The difficulty with the defendant's argument and with the reasoning of the Blistein, Blakeney, and Wamsley decisions, we think, is that they fail to address the straightforward language of the statute. The OWBPA unambiguously states at section 626(f)(1) that an individual "may not waive" ADEA claims unless the OWBPA requirements are met. There is no hint of any exception.
 
 
 19
 Thus, it is clear from the statute that a former employee could no more assent to the waiver of his ADEA claims after having signed the defective release than he could at the time of signing it. Although Congress utilized the familiar language of the common law when it deemed that no waiver would be "knowing and voluntary" unless the eight OWBPA requirements were met, it did not stop there; it also provided that an individual may not waive ADEA claims unless the waiver is knowing and voluntary. 29 U.S.C. § 626(f)(1). Allowing an employee to ratify a release which violates the OWBPA would directly contradict this language.
 
 
 20
 Congress has purposely interposed an obstacle to application of the traditional ratification doctrine by requiring that a knowing and voluntary waiver of ADEA claims cannot occur except in cases in which, at a minimum, the eight OWBPA factors are met. The common law would invalidate a contract as not being knowing or voluntary if it were secured through fraud, duress, coercion, or mistake. But, under the common law, such an invalid contract could be ratified by the retention of the consideration once the fraud, duress, coercion, or mistake was uncovered. The rationale for this rule is that, by keeping the consideration after the voidability of the contract is discovered, the promisor makes a new contract, this time knowing all the facts and circumstances. He renews his promise and keeps the consideration, forming a new contract, because the element which made the original contract invalid is no longer present. Wamsley, 11 F.3d at 540 (citing the Restatement (Second) of Contracts §§ 2 and 19 (1981), and 1 Samuel Williston, Williston on Contracts § 98 (1957)).
 
 
 21
 But, in this case, the invalidating flaw has not been eliminated. The OWBPA information still has not been supplied. It is as if, under a common-law analysis, the fraud, duress, coercion, or mistake infected the new, supposedly ratified contract as well. Thus, even under this analysis, the employee cannot validate the noncomplying release simply by retaining the consideration.
 
 
 22
 The overarching purpose of the OWBPA amendment is to provide employees with information giving them "the ability to assess the value of the right to sue for a possibly valid discrimination claim." Raczak v. Ameritech Corp., 103 F.3d 1257, 1262 (6th Cir.1997), petition for cert. filed, 66 U.S.L.W. 3001 (U.S. June 18, 1997) (No. 96-2002). These plaintiffs are in no better position now to make this assessment than they were when they signed the release. See Long v. Sears Roebuck & Co., 105 F.3d 1529, 1542 (3d Cir.1997), petition for cert. filed, 65 U.S.L.W. 3840 (U.S. June 9, 1997) (No. 96-1988). Although the Wamsley court rejects this analysis, claiming that the "new" promise is somehow "not subject to the waiver requirements of [the OWBPA]," it provides no justification for such an exception. Wamsley, 11 F.3d at 540 n. 11. The new promise still purports to be a release from ADEA claims and is still, by the terms of the OWBPA, invalid if it does not contain the information Congress has required.
 
 B.
 
 23
 Nevertheless, the fact that the terminated employees cannot ratify a defective ADEA waiver merely allows them to pursue their ADEA claims. It does not, by itself, require that they be allowed to retain the consideration paid for an invalid bargain. Although Holiday Inns argues that equitable principles require the return of this money in exchange for which there was no valid promise, we are constrained from providing such relief by the purposes of the OWBPA and, more importantly, practical considerations.
 
 
 24
 Notably, the OWBPA itself contains no sanction for noncompliance. In other words, although employers are charged with writing valid releases, there is no automatic penalty if they fail to do so. See 29 U.S.C. § 626(f)(3). Thus, the only external incentive an employer has to comply with the OWBPA is the savings gained by obtaining valid releases. In the normal case, the cost to an employer of paying an employee for release is less than the cost of litigating potential ADEA claims; thus the incentive for employers to voluntarily comply with the OWBPA.
 
 
 25
 However, in cases where the employer knows that it has impermissibly discriminated based upon age and that the OWBPA information will likely demonstrate such discrimination, and we do not suggest that this is one of them, the economic incentive to comply with the OWBPA will be insufficient. In such a case, the employer may gamble and decide not to provide the OWBPA information, hoping that an employee who does not know he has been discriminated against will be less likely to sue, and will also accept less money for the ADEA waiver. The savings in not having to pay the full settlement value of a viable ADEA claim may outweigh the risk of later not being able to enforce the waiver. In this latter instance, the purpose of the OWBPA to provide employees with sufficient information to evaluate the worth of potential ADEA claims would be frustrated in the very case in which the information is most important.
 
 
 26
 In the case before us, as in most instances, there has been no determination of the amount of the consideration allocable to the ADEA waiver versus the amount paid for release of other potential claims. As the separation and release agreement indicates, Holiday Inns' former employees explicitly released the defendant from liability for numerous claims and, since ADEA liability was not specified, we may infer that Holiday Inns believes it has paid for the release of a number of other claims. It would be extremely difficult, if not impossible, for the district court to identify all the potential theories of liability that these former employees have waived in consideration for money payments. And it would be impossible to assign meaningful values to all those potential claims and then apportion some of the consideration for the ADEA claims, and the rest for the remaining claims. See Long, 105 F.3d at 1543-44.
 
 
 27
 Lastly, also as a practical matter, we note that the eight OWBPA requirements should not be difficult for an employer to meet. Although questions may arise as to whether the information provided by the employer can be understood by the average individual eligible to participate in the severance program, or as to what constitutes a "job title," see Raczak, 103 F.3d at 1262, courts should read these requirements in a common-sense manner and not dogmatically. When the provided information reasonably assists the employee in determining whether he wishes to waive potential ADEA claims, then summary judgment may be appropriate in favor of the employer. Thus, Holiday Inns can hardly complain about the inequity of losing the benefit of its bargain, when it did not even attempt to comply with the minimal requirements of the OWBPA. And, we will not impose the impossible task on district courts of separating out the consideration paid for ADEA waivers from that paid for all other claims, especially in light of the relative ease with which employers could avoid such complications by complying with the OWBPA.
 
 III.
 
 28
 For the foregoing reasons, the district court's order denying summary judgment is AFFIRMED, and the case is REMANDED for further proceedings.
 
 
 
 *
 The Honorable James H. Jarvis, II, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation