**Fred SUHY, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**ALLIEDSIGNAL, Defendant.**

No. Civ. 3:96cv29 (AWT).

United States District Court, D. Connecticut.

March 31, 1999.

Gary Edward Phelan, Garrison, Phelan, Levin–Epstein, Chimes & Richardson, New Haven, CT, for plaintiff.

Peter A. Janus, Siegel, O'Connor, Schiff & Zangari, Hartford, CT, Mark S. Dichter, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant.

Laurie A. McCann, AARP—Worker Equity Section, Washington, DC, for movant.

THOMPSON, District Judge.

## I. BACKGROUND

The plaintiff, Fred Suhy (hereinafter "Suhy"), brings this action individually and on behalf of all others similarly situated pursuant to the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 621 *et seq.*, as amended by the Older Workers Benefit Protection Act of 1990, 29 U.S.C. § 626(f) (hereinafter "OWBPA"). Suhy claims that the defendant, AlliedSignal, engaged in age discrimination in violation of the ADEA when it laid him off in connection with a reduction in force. AlliedSignal has filed a motion to dismiss, arguing that Suhy signed a waiver releasing AlliedSignal from the claims he brings in his Complaint. Suhy has also filed a motion for partial summary judgment seeking a declaratory judgment that (1) AlliedSignal's waiver and release is invalid and thus unenforceable, and (2), that he need not tender back the consideration he received in exchange for signing the waiver as a condition to proceeding with his ADEA claim.

For the reasons set forth below, the court concludes that the waiver signed by Suhy was executed and delivered in connection with a program offered to a group or class of employees and is therefore subject to the waiver requirements set forth in the OWBPA. As a result, AlliedSignal's failure to meet those requirements renders the release unenforceable against Suhy in-

sofar as it purports to waive or release his ADEA claim. The court further concludes that Suhy did not ratify the waiver by accepting an enhanced severance package, as the unenforceable waiver in this case is not subject to ratification, and moreover, that Suhy need not tender back his severance benefits as a condition to proceeding with his ADEA claim.

## II. *RELEVANT FACTS*

In November 1994, AlliedSignal purchased Textron Lycoming. In December 1994, AlliedSignal notified approximately forty employees that they were being laid off in connection with a reduction in the workforce.

AlliedSignal offered each employee selected a written severance agreement. The severance agreement included a waiver and release of all claims against Allied-Signal, including any claims pursuant to the ADEA. Employees who did not sign the waiver received a basic severance package consisting of three weeks "notice pay" and benefits and a minimum of 26 weeks of medical coverage. Those employees who signed the waiver received enhanced severance packages including one week of pay for each year of service with Textron Lycoming.

In an attempt to comply with the disclosure requirements of the OWBPA, the severance agreement included an attachment disclosing the job titles and the ranges of the ages for all individuals eligible for or selected for the severance package, and the ranges of the ages for all individuals in the same classifications who were not eligible or selected for the program.

On January 17, 1995, Suhy signed the waiver and release and received an additional $8,900 in severance benefits. Suhy filed the instant lawsuit on January 9, 1996, challenging the validity of the release and the lawfulness of his termination under the ADEA.

## III. *DISCUSSION*

### A.  *Applicability  Section 626(f)(1)(H)(ii)*

Under the OWBPA, an employee may not waive his or her ADEA rights "unless the waiver is knowing and voluntary...." 29 U.S.C. § 626(f)(1). The OWBPA further provides that "a waiver may not be considered knowing and voluntary unless at a minimum" it meets certain enumerated requirements, including the requirement that:

> if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer ... informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to ... the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H)(ii).[1] The party asserting the validity of the waiver has the burden of proving that the waiver was knowing and voluntary. 29 U.S.C. § 626(f)(3).

AlliedSignal does not concede that the waiver and severance were part of an employment termination program offered to a group or class of employees such that the requirements of Section 626(f)(1)(H)(ii) would apply. Therefore, as a threshold matter, the court must determine the applicability of the requirements of Section 626(f)(1)(H)(ii) to the waiver that Suhy signed in connection with AlliedSignal's reduction in force.

■ While the language of the OWBPA provides little guidance as to the contours of what constitutes an employment termi-

---

1. While the OWBPA imposes additional requirements for a program offered to a group or class of employees, Suhy acknowledges that all but one of the requirements of 29 U.S.C. § 626(f)(1) were met. The dispute here is only over subsection (H)(ii).

nation program offered to a group or class of employees, the legislative history of the OWBPA provides clear guidance as to whether AlliedSignal's reduction in force was part of such a program. The legislative history is, in pertinent part, as follows:

In the context of ADEA waivers, the Committee recognizes a fundamental distinction between individually tailored separation agreements and employer programs targeted at groups of employees. Individual separation agreements are a result of actual or expected adverse action against an individual employee. The employee understands that the action is being taken against him and he may engage in arms-length negotiation to resolve any differences with the employer.

Group termination and reduction programs stand in stark contrast to the individual separation... The trademark of involuntary termination programs is a standardized formula or package of employee benefits that is available to more than one employee... [T]he terms of the programs generally are not subject to negotiation between the parties. In addition, employees affected by these programs have little or no basis to suspect that action is being taken based on their individual characteristics. Indeed, the employer generally advises them that the termination is not a function of their individual status. Under these circumstances, the need for adequate information and access to advice before waivers are signed is especially acute.

S.Rep. No. 101–263, at 63–64 (1990), reprinted in 1990 U.S.C.C.A.N. 1509.

Here, AlliedSignal's acknowledgment that the lay-off was part of a reduction in force is indicative of the nature of Suhy's termination. In addition, there is no indication here that Suhy was released because of his individual work performance. Moreover, the waivers and severance pack-

ages were part of a standardized package of benefits offered in a program targeted at a group of employees; there is no evidence of any individualized negotiation. Finally, employees who did not sign the waiver received a basic severance package, whereas employees who signed the waiver received enhanced severance packages. *See Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 682 (7th Cir.1993) ("[W]e believe that sixty plus employees terminated at one time satisfies OWBPA's definition of a group termination."), *cert. denied,* 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994); *EEOC v. Sara Lee Corp.,* 923 F.Supp. 994, 997 (W.D.Mich.1995) (four employees fired as part of reduction in force found to be group termination program); *Burch v. Fluor Corp.,* 867 F.Supp. 873, 876–77 (E.D.Mo.1994) (involuntary termination in connection with reduction in force was employment termination program for purposes of ADEA).

Based upon these facts, the court finds that AlliedSignal discharged Suhy as part of a program offered to a group or class of employees.[2] Therefore, the requirements of Section 626(f)(1)(H)(ii) are applicable to the waiver Suhy signed in connection with his termination.

### B. Requirements of Section 626(f)(1)(H)(ii)

AlliedSignal contends that the statute does not require a list of all of the ages of employees eligible or ineligible for the program, but rather that a list of the ranges of ages of those who are eligible and ineligible will suffice. The court concludes that adopting such a reading of this provision of the OWBPA would be contrary to the plain language of the statute and would run afoul of its legislative purpose.

#### 1. Language of the Statute

■ There is nothing in the language of the OWBPA to support AlliedSignal's con-

---

**2.** The court notes that regulations adopted subsequent to the occurrence of the events in this case would have been an additional aid in the court's analysis had they been in effect during the relevant time period. *See* 29 C.F.R. §§ 1625.22(f)(1)(iii)(A) and (B) (1998).

tention that ranges of ages is equivalent to a list of *all* ages. The requirements of the OWBPA are clear and unambiguous: the employer must provide "the job titles and ages of *all* individuals eligible or selected for the program, and the ages of *all* individuals in the same job classification" not selected. 29 U.S.C. § 626(f)(1)(H)(ii) (emphasis added). There is nothing in the statute indicating an intention on the part of Congress that this language not be afforded its plain meaning. And under that plain meaning, the OWBPA requires that a waiver provide the ages of *all* relevant employees. If Congress intended to allow employers to satisfy this requirement with ranges of ages, it could have made this distinction in the statute. *See also Tung v. Texaco Inc.,* 150 F.3d 206, 209 (2d Cir. 1998) ("[I]n the present case, Texaco failed to comply with the requirement that the *specified information as to the ages of other employees involved in the same termination program* be given to Tung 'at the commencement of the period' of time he was given to consider the agreement.") (emphasis added).

■ The court does not find persuasive AlliedSignal's argument that "substantial information" or "substantial compliance" with the OWBPA is sufficient to fulfill the statute's unambiguous mandate. The OWBPA implements Congress' policy of protecting the rights and benefits of older workers "via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word." *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 118 S.Ct. 838, 841, 139 L.Ed.2d 849 (1998). Strict compliance with each provision of the OWBPA is therefore necessary, as "a release cannot be deemed knowing and voluntary unless all of the technical requirements of the OWBPA have first been satisfied." *Collins v. Outboard Marine Corp.,* 808 F.Supp. 590, 594 (N.D.Ill.1992); *see also Butcher v. Gerber Prods. Co.,* 8 F.Supp.2d 307, 314 (S.D.N.Y.1998) ("Since the OWBPA establishes minimum or threshold requirements, absolute technical compliance with its provisions is required.").

### 2. Purpose of the Statute

■ The court's reading of the statutory language is wholly consistent with the legislative intent of the OWBPA. In enacting the OWBPA, Congress mandated the disclosure of the comparative information because it believed that:

> ... collectively these informational requirements will permit older workers to make informed decisions in group termination and exit incentive programs. The principal difficulty encountered by older workers in these circumstances is their inability to determine whether the program gives rise to a valid claim under the ADEA... The informational requirements set forth in the bill are designed to give all eligible employees a better picture of these factors.

S.Rep. No. 101–263, at 67 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509.

A range of ages, as opposed to all ages, simply does not provide sufficient information for an employee to make an informed decision as to whether age discrimination is afoot. To find otherwise is to force older employees to make decisions in the same void of information the OWBPA was enacted to prevent. *See Howlett v. Holiday Inns, Inc.,* 120 F.3d 598, 602 (6th Cir.1997) ("The overarching purpose of the OWBPA ... is to provide employees with information giving them the ability to assess the value of the right to sue for a possibly valid discrimination claim.") (internal quotations and citation omitted). Therefore, to the extent AlliedSignal contends that its failure to provide the ages of all relevant individuals in the release was a "non-material ... omission or mistake" Def.'s Reply Memo. [doc. # 34], at 2, the court finds to the contrary, i.e., that the omitted information was material. *See Tung,* 150 F.3d at 209 (employer who provided plaintiff with list of titles and ages of all employees who had and had not been separated from company since beginning

of year violated the OWBPA because the information was not provided until the day the plaintiff signed the release); *Butcher,* 8 F.Supp.2d at 315 (noting that there was no dispute that employer failed to comply with OWBPA's age disclosure requirement where it provided only the numbers of employees that were age forty or older and age fifty or older).

Further, AlliedSignal's provision of ranges of ages does not satisfy "the understandable to the average worker" standard for interpreting the OWBPA's requirements for knowing and voluntary employment waivers. *See Raczak v. Ameritech Corp.,* 103 F.3d 1257, 1263 (6th Cir.1997).

Here, with the limited information provided to him, Suhy could not adequately assess whether he had a potentially valid claim under the ADEA, even if he sought the advice of an attorney. The merits of an age discrimination case cannot be adequately evaluated on the basis of ranges of ages—more information is needed—whether the evaluator is the "average worker" or the "average attorney." *Cf. Raczak,* 103 F.3d at 1263–64 (rejecting argument that defendants necessarily violated Section 626(f)(1) where terminated employees were broken down by exact age and salary grade rather than age and job title as set forth in subsection (H)(ii) and remanding for further consideration focusing on the question of understandability).

\*  \*  \*  \*  \*  \*

As it is undisputed that AlliedSignal did not provide "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who were not eligible or selected for the program," the court finds that the waiver signed by Suhy did not meet the requirements for a knowing and voluntary waiver as set forth in the OWBPA.

Therefore, the court finds that the release, at the time it was signed, was unenforceable against Suhy insofar as the waiver purports to waive or release Suhy's ADEA claim. *See Oubre,* 118 S.Ct. at 842 (holding that a release that does not comply with the OWBPA's "stringent standards" is unenforceable and cannot bar employee's ADEA suit "irrespective of the validity of the contract as to other claims"); *Oberg,* 11 F.3d at 682 (holding that waivers that are not knowing and voluntary under the OWBPA are unenforceable).

## C. *Ratification of the Waiver*

■ AlliedSignal argues that even if the waiver does not satisfy the requirements of the OWBPA, Suhy' s subsequent acceptance and retention of the severance benefits ratified the agreement. AlliedSignal further argues that the ratification provision in the waiver itself supports its contention that the invalid waiver has been ratified.

■ The Supreme Court decided this issue in *Oubre,*[3] concluding that a release that does not comply with the OWBPA requirements cannot bar an employee's ADEA claims. *See* 118 S.Ct. at 841–42. The Court held:

> should not apply to waiver of ADEA rights); *Oberg,* 11 F.3d at 683 (same); and *Forbus v. Sears Roebuck & Co.,* 958 F.2d 1036, 1040 (11th Cir.1992) (same); *with Blistein v. St. John's College,* 74 F.3d 1459 (4th Cir.1996) (holding that invalid ADEA waivers are merely voidable and are subject to ratification); and *Wamsley v. Champlin Ref. & Chems., Inc.,* 11 F.3d 534, 539 (5th Cir.1993) (same), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995), *overruled on other grounds by Oubre,* 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998).

**3.** Before *Oubre,* the circuit courts were split with regard to whether the doctrine of ratification of waiver agreements applies to the OWBPA. *Compare American Airlines v. Cardoza–Rodriguez,* 133 F.3d 111, (1st Cir.1998) (neither ratification nor tender back doctrine apply when employee has signed waiver of ADEA claims that is invalid under OWBPA); *Howlett,* 120 F.3d at 599 (holding that invalid release is not subsequently ratified by employees' retention of severance benefits); *Long v. Sears Roebuck & Co.,* 105 F.3d 1529, 1538 (3d Cir.1997) (holding doctrine of ratification

Nor did the employee's mere retention of monies amount to a ratification equivalent to a valid release of her ADEA claims, since the retention did not comply with the OWBPA any more than the original release did. The statute governs the effect of the release on ADEA claims, and the employer cannot invoke the employee's failure to tender back as a way of excusing its own failure to comply.

*Id.* at 842.

The Supreme Court reached its decision by evaluating the plain language of the OWBPA, which limits the form in which an employee and employer may contract to waive the protections of the ADEA by stating that "[a]n individual *may not* waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1) (emphasis added). With this language, Congress carefully restricted an employee's freedom to waive his or her rights and claims under the ADEA, and under the plain meaning of this language, unless a waiver takes the form required by the statute, an employee cannot contract to waive the protections of ADEA. As explained by the Supreme Court in *Oubre:*

> The statutory command ·is clear: An employee "may not waive" an ADEA claim unless the waiver or release satisfies the OWBPA's requirements. The policy of the Older Workers Benefit Protection is likewise clear from its title: It is designed to protect the rights and benefits of older workers.... Congress imposed specific duties on employers who seek releases of certain claims created by statute. Congress delineated these duties with precision and without qualification: An employee "may not waive" an ADEA claim unless the employer complies with the statute.

Courts cannot with ease presume ratification of that which Congress forbids. 118 S.Ct. at 841.

Therefore, Suhy did not ratify the severance agreement either by virtue of the provision within the severance agreement stating that the agreement was ratified by his signature, or by his retention of the increased severance benefits. "The text of the OWBPA forecloses · the employer's [ratification] defense, notwithstanding how general contract principles would apply to non-ADEA claims."[4] *Id.* at 842.

### D. *Tender Back Requirement*

■ Finally, AlliedSignal argues that Suhy should at least be required to "tender back" the increased severance benefits he received for executing the waiver before he can pursue this action.

The Supreme Court also addressed this issue in *Oubre,* stating that the OWBPA governs the effect of a release on ADEA claims, "and the employer cannot invoke the employee's failure to tender back as a way of excusing its own failure to comply." *Id.* at 842. The Court reasoned that a rule such as that urged by AlliedSignal,

> ... would frustrate the statute's practical operation as well as its formal command. In many instances a discharged employee likely will have spent the monies received and will lack the means to tender their return. These realities might tempt employers to risk noncompliance with the OWBPA's waiver provisions, knowing it will be difficult to repay the monies and relying on ratification. We ought not to open the door to an evasion of the statute by this device.

*Id.*

Therefore, Suhy is not required to tender back his severance benefits in order to proceed with this action. However, the

---

**4.** Although the court does not necessarily disagree that "five or more Justices take the view" that the provisions of the OWBPA "are consistent with viewing an invalid release as voidable, rather than void," *Oubre,* 118 S.Ct. at 844 (Breyer, J., concurring), the court need not address the void/voidable distinction since it has determined that the failure to provide for Suhy the ages of all relevant employees was, in any event, a material omission.

Court in *Oubre* specifically left open the question whether an employer may have a claim for restitution, recoupment or set-off against the employee. *See id.; accord Tung,* 150 F.3d 206 at 209.

## IV. *CONCLUSION*

For the reasons set forth above, the defendant's Motion to Dismiss [doc. # 7] is hereby DENIED, and the plaintiff's Motion for Partial Summary Judgment [doc. # 28] is hereby GRANTED.

It is so ordered.